**224 A.2d 387.**

MARY TIROCCHI *vs.* UNITED STATES RUBBER COMPANY.

DECEMBER 1, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

430

POWERS, J. These are appeals which are claimed by both an employee and her employer from a final decree of the workmen's compensation commission sustaining the employer's appeal from the decree of a single commissioner. The cause originated with the filing of an employee's petition to review and the posture in which it is presented to this court can be better comprehended from a recitation of the travel as established by the record.

It appears therefrom that on December 28, 1960, petitioner while operating a preform hydraulic press in the employ of respondent sustained serious injuries to both hands when they were caught and crushed in said press. There being no question of petitioner's right to compensation benefits, a preliminary agreement was signed by the parties on January 24, 1961 and approved by the director of labor. By the terms thereof, petitioner was to receive compensation for total incapacity on an average weekly wage of $79.84 until otherwise terminated and $24 weekly for a pe-

riod of 164 weeks as specific compensation for the loss of four fingers on her left hand and three fingers on her right. Under the agreement, compensation benefits started to run December 29, 1960 and petitioner continues to receive compensation for total incapacity.

On August 24, 1964 she filed an employee's petition for review of the agreement, based on her claim of specific compensation for the permanent uselessness of her hands resulting from the loss of the fingers. Further, in the petition she claimed that respondent refused to pay medical expenses provided for in G. L. 1956, §§28-33-5 and 28-33-8, as amended.

When the cause came to be heard by a single commissioner, respondent questioned the appropriateness of a petition to review when asserting a claim for specific compensation. For the purposes of that claim the petition was thereafter treated as an original petition for specific compensation and respondent makes no contention that the adopted procedure was in anywise invalid.

The probative evidence adduced before the single commissioner consists of petitioner's testimony and that of Dr. Armand Versaci together with a series of correspondence between the latter and the Institute of Physical Medicine and Rehabilitation located in New York city, Dr. Robert W. Beasley of the Institute of Reconstructive Plastic Surgery connected with New York University Medical Center, and Dr. Joseph H. Dwinelle of the Rhode Island Hospital Physical Medicine Department. From an analysis of this correspondence it would appear that about April 30, 1963, Dr. Versaci referred petitioner to Dr. Dwinelle and the latter had petitioner admitted to the Institute of Physical Medicine and Rehabilitation where she remained from February 4 to February 11, 1964. During petitioner's stay at said institute she was interviewed by Dr. Beasley of the

New York University Medical Center apparently as part of the institute's program.

In any event Dr. Versaci, a specialist in plastic surgery, testified that he performed five operations or "procedures" in an effort to preserve and/or reconstruct as much of each hand as possible. The first was performed December 29, 1960 and the last November 21, 1961. At the conclusion of the surgery or procedures, four fingers of the left hand were lost by amputation but on the right hand three fingers were amputated and the long finger was substituted for the index finger to give petitioner the best possible pinch by using it with the thumb. The doctor continued to see petitioner and about November or December 1962 he sent her to a prosthetic specialist named Tanenbaum in New York. The petitioner returned, he further testified, with cosmetic hands which admittedly have no functional value and are used for appearance. It was the doctor's testimony, corroborated by petitioner, that she had difficulty wearing them and did so on a very limited basis.

The doctor further testified that at or about the time he referred petitioner to Dr. Dwinelle at the Rhode Island Rehabilitation Center he believed that he had done about as much as he could by way of reconstructive surgery. This was the end of April or the first week in May 1963. It is the sense of Dr. Versaci's testimony that the referral to Dr. Dwinelle was for physical, psychological and rehabilitating therapy. It is also clear that both doctors were interested in possible functional advantages to petitioner through the use of mechanical prosthetic devices. It is equally clear from all the correspondence and the testimony of Dr. Versaci as well as that of petitioner that she had no interest in such devices, an attitude quite probably resulting from her unsatisfactory experience with the cosmetic hands.

In addition to her claim for specific compensation benefits, petitioner was seeking to have respondent provide her

with the services in her home of a helper in housekeeping and personal needs. Both petitioner and Dr. Versaci testified in considerable detail as to the numerous ways that petitioner would be helped about her home and in the care of her person.

On the basis of the record before him the single commissioner awarded petitioner specific compensation benefits for the permanent total loss of use of the left hand and 90 per cent loss of the use of the right hand, crediting respondent with payments made pursuant to the preliminary agreement. He also awarded $35 weekly for a period of nine months to defray the expenses of a helper in the home.

From the entry of his decree containing such awards respondent appealed to the full commission, which sustained the appeal and entered a decree reversing the single commissioner.

Both petitioner and respondent claimed an appeal therefrom to this court. In view of the consideration hereinafter given to petitioner's appeal, we deem it necessary to consider only one aspect of respondent's appeal. It is concerned with respondent's first reason, namely, that petitioner's claim for specific compensation was not filed within the time fixed by law.

In support of this reason, respondent argues that if there were resulting permanent uselessness to both hands compensable under the statute, such uselessness became known on November 21, 1961 when reconstructive surgery ended. The petition not being filed until August 24, 1964, respondent contends it was not filed within the two-year period prescribed by G. L. 1956, §28-35-57, as amended.

It is the essence of respondent's argument that since petitioner's hands were anatomically in the same condition with the completion of the last surgery November 21, 1961, as they were in early May 1963 when Dr. Versaci concluded that he could do nothing further to help petitioner, the

doctor could not select this latter date nor could the single commissioner accept it as the time when the statute began to run. The issue here, however, is not the anatomic condition of petitioner's hands. It is rather at what time following surgery did the percentage of uselessness of the hands, if any, become manifest. In justice to both an employer as well as an employee, reason and experience recommend judicial recognition of a period of use of impaired bodily members before an opinion as distinguished from a guess can be given. We think then that in circumstances such as are here present the statute begins to run at the time sound medical opinion has it that, independent of prosthetic devices, post-surgery functional development can objectively be said to have reached its potential. Involved therein are such conditions as the extent of the healing of scar tissues, improvement of circulation, reasonable minimum tenderness, not to mention such damage to the sensory nerves as time may prove to be irreparable.

It was an evaluation of such conditions on which Dr. Versaci reached his opinion early in May 1963 that he had done about as much as he believed could be done to achieve maximum functional development. The record discloses that conversely Doctors Dwinelle and Beasley believed that still greater development was possible.

Clearly then if petitioner had prosecuted her claim based on the condition of her hands at or shortly after the time Dr. Versaci last performed surgery, respondent could have contended with justification that there was no competent evidence to establish the permanency of any percentage of uselessness.

The commission therefore did not err in failing to find that petitioner's claim for specific compensation was not filed within the required statutory period. The respondent's appeal therefore is denied and dismissed.

We turn then to petitioner's appeal and consider first her

reasons assigning as error the last three findings of fact set forth in the commission's decree entered January 20, 1966. They are:

"3. Petitioner failed to prove that either hand at or above the wrist has been rendered useless as a result of her severed fingers resulting from her injuries.

"4. Petitioner failed to prove the extent, if any, of the permanent loss of use of her hands at or above the wrist.

"5. Petitioner failed to prove that her specific loss was other than the loss by severance of the 1st, 2nd, 3rd and 4th fingers of her left hand and the loss by severance of the 2nd, 3rd, and 4th fingers of her right hand; such losses have been the subject matter of a preliminary agreement duly executed between the parties on January 24, 1961, and legally approved."

The decree in question was entered prior to the filing of our decision in *Mustapha* v. *Patton*-MacGuyer Co., 100 R. I. 493, 217 A.2d 240. There we held that permanent uselessness of the hand resulting from severance by amputation of fingers injured in a compensable accident entitled the employee to specific compensation benefits for such percentage of permanent uselessness of the hand as she could prove under the provisions of G. L. 1956, §28-33-19, and further that the provisions of a preliminary agreement providing specific compensation benefits for severance of the phalanges did not render the question of permanent uselessness of the hand res adjudicata.

The decision of the full commission discloses that its finding numbered 5 is predicated on the decision rendered by it denying specific compensation for the hand in *Mustapha* v. *Patton-MacGuyer Co., supra.* It would seem therefore that no extended argument is required to hold the commission's fifth finding in the instant cause to be contrary to our holding in the *Mustapha* case and consequently erroneous.

The respondent argues vigorously, however, that the *Mustapha* case is not controlling here by reason of the findings of fact numbered 3 and 4 in the decree of the full commission. This argument is predicated on the proposition that all of the evidence, including petitioner's own testimony, is that both wrists are normal, neither being impaired to any degree as a result of the accident and subsequent severance by amputation of the fingers.

This circumstance is controlling, respondent contends, because of our holding in *Pearson* v. *Seaboard Construction Co.*, 88 R. I. 345, that the wrist is part of the hand. The respondent, however, misreads that case in this regard. There, we were passing on the construction of now G. L. 1956, §28-33-19(m), as amended, in the light of the then statutory provisions. They were contained in P. L. 1947, chap. 1941, and read as follows:

> "Where any bodily member or portion thereof has been rendered permanently stiff so as to be useless, or permanently useless, compensation in accordance with the above schedule shall be paid as if the member or portion thereof had been severed completely."

In the *Pearson* case, the index finger of the injured employee's left hand had been rendered useless and the wrist fused so as to be totally stiff. Specific compensation benefits for the loss of the index finger were awarded, but were denied as to his claim that because of the impairment of the index finger and wrist he was entitled to further damages for the loss of usefulness to the hand by reason of the permanent total stiffness to the index finger and wrist. There was competent evidence that there was some usefulness left to the hand, and since the then applicable statute made no provision for partial loss of usefulness the employee was not entitled to specific compensation for loss of the hand. We noted that the legislature, then as now, made no provision for loss of use of the wrist as a separate bodily member, leaving it to be considered as a part of the

hand. The then provisions, "has been rendered permanently stiff so as to be useless, or permanently useless," or as now, "has been rendered permanently stiff or useless," are equated with severance and the statute refers to severance "at or above the wrist * * *." G. L. 1956, §28-33-19(a), as amended.

Thus, if permanent loss of usefulness of a hand or hands can be established, it is immaterial whether the wrists, or either of them, are involved.

The respondent also urges that the facts in the instant cause are analogous to those in *Walsh* v. *C. J. Fox Co.*, 76 R. I. 345, where specific compensation benefits were denied to an injured employee for permanent loss of the use of his hand by reason of the severance of four fingers and a portion of the palm. That case was decided on the provisions of P. L. 1941, chap. 1056, and is not apposite to the provisions of the statute applicable here.

It appearing that findings of fact numbered 3 and 4 in the decree of the full commission are predicated on the proposition that the evidence discloses no loss of use to either hand at or above the wrist, these findings are also erroneous.

The petitioner's 5th and 6th reasons of appeal assert as error the commission's findings numbered 3 and 4 and these reasons are therefore also sustained.

In her reasons numbered 7 and 8 petitioner assigns as error that the commission erred in failing to sustain the single commissioner's findings that she had suffered a 90 per cent permanent loss of the use of her right hand and the total loss of use of her left. Her contentions in this regard are somewhat troublesome. They are, in essence, that the testimony of petitioner and all of the medical testimony, none of which is contradicted, graphically establish that all that is left of petitioner's hands are two elongated stumps.

Moreover, she points out Dr. Versaci, who performed all the surgery and otherwise treated petitioner thereafter, stated categorically and without contradiction that petitioner's left hand had been rendered totally and permanently useless, while her right hand had sustained a permanent loss of 90 per cent of its usefulness. The condition of petitioner's hands is not disputed, she argues, and thus presents a legal question reviewable in this court, citing *McDonald* v. *John J. Orr & Son, Inc.*, 94 R. I. 428.

By this argument petitioner would equate the established post-surgery architecture of her hands with the uncontradicted testimony as to the percentage of loss. However, there is testimony by petitioner as well as by Dr. Versaci as to some things that she can do with each hand, and the doctor's testimony as to 100 per cent loss of the use of her left hand is, in our judgment, subject to the rule adopted in *Gorman* v. *Hand Brewing Co.*, 28 R. I. 180, and cited as applicable to workmen's compensation cases in *Walsh-Kaiser Co.* v. *Della Morte*, 76 R. I. 325.

The essence of that rule in issue here is as stated at page 183 of *Gorman* v. *Hand Brewing Co., supra*: " 'But a witness may be contradicted by the facts he states as completely as by direct adverse testimony. A court or jury is not bound to accept it as true merely because there is no direct testimony contradicting it, where it contains inherent improbabilities or contradictions, which alone, or in connection with other circumstances in evidence, satisfy them of its falsity.' "

The applicability of this rule here is made apparent if we consider the hypothetical cases of two workmen, each of whom has had his left hand severely crushed or mangled. One suffers severance of his hand at the wrist, while surgery preserves a thumb and palm of the hand of the other workman. That the latter has not sustained the totality

of loss of use as has the other cannot be gainsaid. The differential may be slight but it exists.

Furthermore, although the legislature has intended to equate loss of use by stiffness or otherwise with severance, a problem arises that is not present when a hand is severed at or above the wrist. Then, there is nothing of the severed hand which could be useful in connection with the other. Such is not the case, however, when there is a percentage of permanent loss of usefulness to a hand not completely severed.

We think then that in passing on the percentage of loss of usefulness for which specific compensation benefits are recoverable under §28-33-19.(m), the usefulness of such hand in complementing the use of the other must be given some weight. What that should be is a question of fact to be determined by the commission on the basis of probative evidence.

We think that the cause of justice can be best served in the case before us by remanding it to the workmen's compensation commission for findings consistent with this opinion and predicated on §28-33-19, clauses "a" and "m," as amended. Against the assessment of any specific compensation award there must, of course, be credit given to respondent for specific compensation benefits previously paid.

There remains for our consideration, however, petitioner's contention that the commission erred in holding as a matter of law that §28-33-5 does not entitle her to the assistance of a worker in the home whose duties would admittedly be those of a combination housekeeper and personal maid. Her claim to such assistance is predicated on §§28-33-5 and 28-33-8, as amended.

These provisions are in part:

§28-33-5. "Medical services provided by employer—Maximum charges.—The employer shall, subject to the choice of the employee as provided in §28-33-8, promptly provide for an injured employee such reasonable

medical, surgical, dental, optical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus for such period as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury * * *."

§28-33-8. "Employee's choice of physician, dentist, or hospital—Payment of charges.—An injured employee shall at all times be entitled to treatment, care or rehabilitation by a physician, dentist or hospital of his own choice. Nothing herein contained shall prevent the treatment, care or rehabilitation of an employee by more than one (1) physician, dentist or hospital."

It is readily apparent from a fair reading thereof that the benefits provided in the aforequoted provision of §28-33-8 do not authorize the commission to provide an injured employee with a helper in the home such as that requested by petitioner here. The language is clear and unambiguous, leaving no room for a judicial construction premised on an uncertainty as to what the legisature intended.

The petitioner argues vigorously, however, that "such reasonable * * * other attendance * * * for such period as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury" as the same appears in said §28-33-5 does evince the legislature's intention to provide an injured employee such as petitioner with the type of personal assistance established by the record.

Before turning to a consideration of the cited authorities, it should be noted that the record before us discloses that petitioner is married and lives with her husband who helps her with personal and household needs when he is home, but that during the day when he is working she is dependent on the voluntary assistance of relatives or neighbors who come in for that purpose. Further, the record is replete with examples of household and personal tasks which admittedly petitioner is unable to perform for herself. Moreover, respondent does not so much as suggest that the

examples cited by petitioner and Dr. Versaci are open to question or that petitioner is not severely limited in what she can do for herself. Indeed the record discloses that respondent, on a voluntary basis extending some fifteen months from the time of the accident, made payments of $2,075 for the type of services petitioner claims to be respondent's legal obligation.

Thus it cannot be doubted that the nature of the services petitioner seeks to have respondent provide would relieve her from the effects of her injury.

The issue, however, is whether the nature of assistance petitioner seeks to obtain is that which the legislature made obligatory on an employer by reason of the quoted statute. Contending that the full commission erred in holding that as a matter of law §28-33-5 does not obligate respondent to provide the assistance sought, petitioner cites *LeClair* v. *Textron Mills, Inc.*, 77 R. I. 318, *Izzi* v. *Royal Electric Corp.*, 100 R. I. 380, 216 A.2d 363, and numerous cases from other jurisdictions.

In *LeClair* v. *Textron Mills, Inc., supra*, the workman was seeking extended medical care and expenses under then G. L. 1938, chap. 300, art. II, §5, as amended, which made such extended treatment an obligation on the employer when found "necessary to effect cure or rehabilitation of the injured employee * * *." On competent evidence the trier of fact found that such extended treatment consisted mainly of diathermy treatments and that such treatments, although they would relieve pain, would not effect a cure or rehabilitation. This court sustained the denial of the claim holding that the benefit sought had not been provided by the general assembly. The provision on which the case turned is now included in §28-33-5 and concludes with, as stressed by petitioner, "as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury * * *." Clearly then, she argues that in amending

the applicable provision subsequent to the decision in the *LeClair* case, the legislature intended to "relieve" an injured employee from the effects of the injury even though the services provided would neither cure nor rehabilitate.

This argument, however, ignores or overlooks the specifically-designated nature of the employer's obligation to relieve an injured employee from the effects of a compensable injury. An analysis of this obligation as expressed in said §28-33-5 discloses that the means designed to accomplish such relief are medical in nature. Contrary to petitioner's urging, a liberal construction of the statute does not warrant lifting "or other attendance or treatment" out of context and attributing to it a meaning totally foreign to that which it has when the section is read as a whole. It is entitled, "Medical services provided by employer," and the quoted phrase on which petitioner relies is preceded by "such reasonable medical, surgical, dental, optical" and followed by "nurse and hospital service, medicines, crutches and apparatus * * *." In such context it would be irrational to give the phrase relied on a meaning completely at variance with the fair intendment of the section when read in its entirety, as it must be. See *Trudeau* v. *United States Rubber Co.*, 92 R. I. 324.

Appealing as is the plight of the instant petitioner, neither the workmen's compensation commission nor this court is at liberty to legislate by judicial construction so as to give meaning contrary to the fair intendment of the relevant statutory provision. As this court stated in *George A. Fuller Co.* v. *Schacke*, 71 R. I. 322, 326: "We conceive it our duty to give meaning to the words of the statute and to leave to the legislature further liberalization which is beyond the reasonable limits of judicial construction."

Nor can we agree that the holding of this court in *Izzi, supra,* and those of the courts in other jurisdictions discussed at length in petitioner's brief run counter to the

meaning that we give to the words "or other attendance or treatment" as they appear in §28-33-5.

When the facts in each of these cases are related to the court's judgment, it becomes apparent that the expenses for which the employer was chargeable under the applicable statutes were incurred in carrying out a course of medical treatment directly or implicitly related to the employee's health and prescribed by the employee's physician. Here petitioner makes no such claim and Dr. Versaci expressly testified that the services for which respondent was sought to be charged were not such as would be required of either a registered or practical nurse.

We hold, therefore, that the relief sought not being medical in character, the commission did not err in concluding that as a matter of law respondent was not obligated to provide the type of services sought by the petitioner.

The appeal of the employer is denied and dismissed, that of the employee is sustained in part and denied in part, and the cause is remanded to the workmen's compensation commission for further proceedings in accordance with this opinion.

*Temkin, Merolla & Zurier, Amedeo C. Merolla,* for petitioner.

*Carroll, Kelly & Murphy, Ambrose W. Carroll,* for respondent.