250 A.2d 361.

ANNA N. FONTAINE *vs.* DR. I. SYDNEY GORFINE *et al.*

FEBRUARY 19, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is an employee's petition for specific compensation benefits for the "loss of use and function" of her left hand. A single commissioner found for the petitioner and, in addition to awarding miscellaneous benefits, directed weekly payments for a 25 per cent loss of use. Both parties appealed to the full commission. The principal reason of appeal relied upon by the petitioner was that the payment ordered by the single commissioner was insufficient in amount. The full commission, except to the extent that it sustained petitioner's appeal, affirmed the earlier decree in substantially all of its other aspects. It ordered the respondents to pay specific compensation benefits of $30 per week for a period of 61 weeks for the permanent 25 per cent loss of use of the petitioner's left hand, credited them with $500 on account of specific compensation previously paid in 1952 and directed payment of counsel fees, fees for the testimony of an expert witness, and reimbursement of miscellaneous costs. From that decree, the respondents have appealed.

The respondents are dentists and petitioner was employed by them as a dental assistant. Her duties included taking dental X rays. In 1947 she was bothered by a broken thumb nail. She sought medical assistance and was told that she had suffered X ray burns of her left hand. This necessitated surgery in 1951. A preliminary agreement was then entered into and she received weekly benefits of $28 based on an average weekly wage of $57. That agreement recited her injury as "Radiation damage to left thumb" and gave as its cause "Occupational condition

caused by x-ray films." The agreed payments were made until petitioner returned to work in March 1952.

Thereafter, in 1957, and again in 1960, petitioner submitted to surgery, and on each occasion, as well as for a period in 1954, she received compensation benefits. The 1957 surgery involved the amputation of the distal phalanx of her left thumb for which, in addition to other benefits, she thereafter was paid specific compensation of $20 per week for 25 weeks pursuant to an agreement dated October 9, 1952. Other than while disabled, petitioner has continued to work for respondents and is still in their employ. Since 1958, however, she has acted as a secretary-receptionist, rather than as a dental assistant. In that position she does not come in contact with X-ray radiation.

What the condition of her hand was and whether it worsened or in any way changed in the five years following the 1960 surgery the record does not disclose. We do know, however, that she also suffered from radiation burns to the index and middle fingers of her left hand as well as to the thumb, and that she underwent periodic medical examinations for that condition from 1960 to 1967. We know also on the basis of her own uncontradicted testimony that within two years next preceding the filing of this petition she developed a numbness in her hand and that within that timespan it became increasingly difficult for her to close her hand and to pick up anything. It was these changes in the condition of her hand which prompted the filing of this petition for specific benefits on April 4, 1967.

Before the commission the only medical testimony came from Dr. E. Arthur Catullo, an orthopedic surgeon, who examined petitioner during the pendency of the hearing and who testified on her behalf. His opinion was that petitioner had sustained a 25 per cent permanent loss of use of her left hand. That loss, he said, was based in part on the partial amputation of her thumb, and in part also

upon a hypesthesia and atrophy in the left index and middle fingers, and upon a slight limitation of motion of the hand. While frank to admit that the lack of an opportunity to examine petitioner prior to the trial made it impossible for him to determine when her increased loss of use had first manifested itself, he nonetheless stated that the condition he had described was the end result and was permanent.

The principal and the only substantial legal problem raised by the appeal is whether petitioner's permanent 25 per cent loss of use of her hand occurred or was manifested within two years of the time she filed her petition for additional specific compensation. Unless it did occur or was manifested within that period, her claim is barred by G. L. 1956, §28-35-57, as amended. That section, in pertinent portion, requires that an employee's claim for compensation under chapters 29 to 38 inclusive, of the Act shall be barred unless an agreement or petition shall be filed within two years after the occurrence or manifestation of the injury or incapacity.

Respondents rely on *Tirocchi* v. *United States Rubber Co.*, 101 R. I. 429, 224 A.2d 387. The rule of that case is that the statutory period within which a claim for specific compensation may be filed begins to run at the time sound medical opinion concludes that post-surgery functional development of a damaged member can objectively be said to have reached its potential. The respondents misapply that rule when they argue that it bars the claim in this case.

*Tirocchi* was a case where a worker, whose hands had been crushed in an industrial accident, submitted to reconstructive surgery as well as to physical, psychological and rehabilitative therapy in an attempt to achieve as great an amelioration as possible of the effects of her injury. That treatment was intended to better and improve the condition of her hands, and, in justice both to her and to her

employer, we held that the extent of the percentage of her loss of use of her hands should not be determined until sound medical opinion could objectively conclude that whatever betterment and improvement might result from the post-surgical treatment had reached its potential. The issue in *Tirocchi* was not with the anatomic condition of the damaged hands. Rather were we concerned with when and at what point in the reconstructive and rehabilitative treatment sound medical practice could do no more to improve that condition.

The *Tirocchi* rule must be considered in the light of what it was designed to achieve, and, so construed, the sound-medical-opinion doctrine it lays down applies not to when the condition giving rise to a cause of action first occurs or manifests itself, but rather to whether an existing condition is permanent and to whether an end result in its treatment has been reached. It is to those questions, rather than to when the incapacitating condition occurred or was manifested, that the sound-medical-opinion doctrine is addressable. So limited, the *Tirocchi* doctrine has no application to the argument respondents advance in this case. Here the medical testimony was that petitioner's condition was permanent and that an end result had been achieved. That testimony was neither impeached nor contradicted. That it came from a non-attending physician who had examined petitioner only once may, subject to the general rules affecting uncontradicted and unimpeached testimony, reflect on its weight. It does not destroy its probative effect. Moreover, that testimony, once accepted, satisfies the *Tirocchi* requirement that there be a sound medical opinion concerning the permanency of the condition complained of and whether a maximum functional result in its treatment has been realized. With those issues disposed of, the only question open for resolution was when petitioner's increasing disability gave rise to a claim

for specific compensation and on that question her testimony, again undisputed and uncontradicted, was that the conditions for which she now seeks benefits occurred or manifested themselves within two years of the filing of her petition.

The commission accepted Dr. Catullo's medical opinion and found that petitioner's loss of the use of her hand was permanent and that an end result had been achieved. In addition, it believed petitioner and found that the conditions giving rise to her claim for specific compensation first occurred or manifested themselves within two years of the filing of the petition herein. Those findings are supported by competent evidence and, in the absence of fraud, are conclusive on us. They satisfy the requirement of the statute that a petition be filed within two years after the occurrence or manifestation of the injury or incapacity.

The respondents advance several other grounds for reversal. First, citing *Fogarty* v. *State,* 103 R. I. 228, 236 A.2d 247, they argue that specific compensation is payable only when there has been a *permanent* loss of usefulness. Continuing, they say that in this case the decree entered by the trial commissioner contained no finding on the question of *permanency,* that petitioner did not press that omission as a reason of appeal before the full commission, and that the full commission was thereby precluded from finding that the loss of use was *permanent.*

The difficulty with these contentions is that they ignore the trial commissioner's decision, a fair reading of which compels the conclusion that he in fact found that the loss of use was *permanent.* In these circumstances we read into the decree which thereafter entered the factual determinations contained in the decision upon which it was predicated. *Paolantonio* v. *Evans Plating Co.,* 101 R. I. 71, 220 A.2d 231; *Gray* v. *Kagan,* 87 R. I. 264, 140 A.2d 269; *Caspar* v. *East Providence Artesian Well Co.,* 49 R. I. 8,

139 A. 470. It was not error, therefore, for the full commission upon its own motion to correct what obviously was an oversight and to provide in its own decree that petitioner had sustained a *permanent* 25 per cent loss of use of her left hand.

Next, respondents contend that petitioner should not prevail because she failed to comply with §28-33-30[1] which, as they construe it, demanded as a condition precedent to the maintenance of her claim for specific compensation that she notify them within 30 days of the time when her cause of action accrued. We do not read that requirement as they do.

While §28-33-30 requires that notice be given to an employer within a fixed number of days of the happening or manifestation of an "injury," the word "injury" does not have the same meaning wherever it appears in the compensation act. Generally it means an incapacity for work. *Ludovici* v. *American Screw Co.*, 99 R. I. 747, 210 A.2d 648. While that is obviously its meaning in §28-33-30, it is not the sense in which it is used in §28-33-19, as amended, which establishes the right of an injured worker to additional benefits for certain specific conditions. *Sherry* v. *Crescent Co.*, 101 R. I. 703, 226 A.2d 819. There the reference is not necessarily to the happening or manifestation which resulted in the incapacity to earn; rather it is to when the specific type of condition occurred or manifested itself. The two may occur simultaneously as, for example, where an arm is completely severed in an industrial accident. That is not always the case, however, because the specific condition may arise long after the in-

---

[1] General Laws 1956, §28-33-30 provides that:

"Time for notice of injury to employer.—No proceedings for compensation for an injury under chapters 29 to 38, inclusive, of this title shall be maintained unless a notice of the injury shall have been given to the employer within thirty (30) days after the happening or manifestation thereof."

capacity to earn occurred. That is the situation here where petitioner seeks additional benefits for a condition whose manifestations first became apparent more than 15 years after her original incapacity to work developed. Although §28-33-30 required that she give notice when that original incapacity for work first developed, it did not demand that an additional notice be given within 30 days after the condition which is the basis of her present claim first manifested itself.

A further assignment of error is that the full commission's award of specific compensation should have been based upon petitioner's average weekly earnings of $57 as set forth in the first preliminary agreement of 1952, rather than the $67 earnings figure which appears in a subsequent agreement dated May 25, 1959. That contention is without merit. A right to specific compensation accrues when one of the conditions prescribed in §28-33-19, as amended, occurs or is manifested, and it is the average weekly earnings then being received, rather than what might have been paid at the time of the original injury, which controls in the award of the specific benefits. *Sherry* v. *Crescent Co., supra.*

Here, as we have already indicated, the prescribed condition occurred and the cause of action accrued within two years of the filing of the petition. In those circumstances, it was not unreasonable for the commission to infer that at such time petitioner's salary had not reverted to what it had been in 1952 and that it continued at a rate at least equal to its 1959 level. That factual determination, like others made by the commission, is, absent fraud, conclusive.

Finally, respondents, conceding arguendo that they might not prevail in any of their other contentions, argue that the credit given in this case for the specific compensation paid petitioner in 1952 should be expressed in terms of the number of weekly payments made, rather than in the

amount of dollars paid, and that they should now receive a credit for 25 weeks of payments, rather than for the $500 actually paid at the rate of $20 a week for 25 weeks. While the issue thus raised was not argued in *Mustapha* v. *Patton-MacGuyer Co.*, 100 R. I. 493, 217 A.2d 240, we assumed there that a direction for the payment of specific compensation in addition to what may previously have been ordered will be reduced by such amounts as may have already been paid. We see nothing in the statute or otherwise which in any way suggests that we depart or deviate from that assumption.

The respondents' appeal is denied and dismissed, the decree apealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Bernard W. Boyer,* for petitioner.

*Jordan, Hanson & Curran, E. Howland Bowen,* for respondents.