412 A.2d 243.

TINA FONTAINE *vs.*
ROMEO CALDARONE, DIRECTOR OF LABOR.

MARCH 14, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Weisberger and Murray, JJ.

KELLEHER, J.  This is an appeal by the Director of Labor (the director) from a decree of the full Workers' Compensation Commission affirming the trial commissioner's grant of benefits from the Second Injury Indemnity Fund to Tina Fontaine (Tina).

The facts are undisputed. When Tina was part of the work force, she was employed by a group of dentists as a dental assistant. Among the many tasks assigned to her was the taking of dental X rays. On December 31, 1957, Tina and the dentists' insurer executed an agreement whereby Tina was to receive weekly payments of $32 and other compensation benefits as long as she was totally incapacitated. The agreement described Tina's injuries as "radiation burns on left thumb, middle finger -- left hand." On March 7, 1977, the insurer wrote to Tina and advised her that the enclosed check would be the last payment due from the insurer because the statutory maximum of 1,000 weeks of benefits had been attained with the March 7 mailing.[1] Two days later, in a letter dated March 9, the insurer notified the Department of Labor's Division of Workers' Compensation that Tina had reached the 1,000-week plateau. It also enclosed a copy of its last medical report and advised the division's director that "subject to your decision," Tina was now eligible for Second Injury Indemnity Fund benefits.

Tina's petition for Second Injury Indemnity Fund benefits was filed with the commission on March 10. A copy of the petition was filed with the Director of Labor on April 14. Hearings on the petition occurred on May 11 and June 15.

Throughout this controversy the director has taken the position that the commission lacked jurisdiction to entertain Tina's petition because of her failure to comply with the

---

[1] In 1957 the Workers' Compensation Act, to wit, G.L. 1956 §28-33-17, absolved an employer from the obligation of paying weekly benefits to a totally incapacitated individual once that individual had received either 1,000 weeks of benefits or the individual had received benefits totaling $16,000.

terms of G.L. 1956 (1979 Reenactment) §28-37-6. According to this section, any party claiming Second Injury Indemnity Fund benefits shall first file with the director a petition "which petition shall follow the procedure as outlined in chapter 35 of this title"; and if the claim is questioned, the director "shall forthwith transmit all papers" to the commission where a hearing will be held. According to the director, the commission was powerless to act until such time as the director transmitted Tina's papers to the commission. We disagree.

Second Injury Indemnity Funds are in the nature of a trust fund, and the director's concern in regard to Tina's bypassing him is commendable. However, we are also aware that the provisions of the Workers' Compensation Act are to be liberally construed to effectuate the benevolent purpose that led to its enactment. *Church* v. *Doherty*, 107 R.I. 432, 267 A.2d 693 (1970). We believe that in enacting §28-37-6 the General Assembly had two specific goals in mind: (1) to ensure that the director, as the administrator of the Second Injury Indemnity Fund, had proper notice of all claims against the fund and (2) to avoid needless and oftentimes lengthy litigation before the commission when the claimant is obviously entitled to the statutory benefits. However, we are also aware that there may be times when administrative inertia may be equivalent to the denial of the relief sought. *See Caswell* v. *Califano*, 583 F.2d 9, 15 (1st Cir. 1978); *West Broadway Task Force, Inc.* v. *Commissioner of Department of Community Affairs*, 363 Mass. 745, 748, 297 N.E.2d 505, 509 (1973).

Admittedly, Tina might have placed the cart before the horse when she filed for benefits in March without first checking things out with the director. However, the cart was returned to its rightful position in April when she filed a second petition for benefits and gave the director notice of its pendency. Her claim came on for hearing before the trial commissioner on May 11. At that time counsel for the director told the trial commissioner that on April 14 counsel had written to the director and inquired if "the fund would vol-

untarily pay Miss Fontaine." According to the director's counsel, no response was made to the inquiry. In our opinion, the director's continued silence is the equivalent of a denial of Tina's petition and warranted the commission's assumption of jurisdiction.

There were two witnesses at the hearing before the trial commissioner. They were Tina and Dr. Bert S. Jeremiah, a specialist in reconstructive surgery of the hand. Doctor Jeremiah has been treating Tina "for many, many years."[2] He explained that Tina's difficulty arose because, instead of having the patient hold the film to the gum line, Tina would hold the film with one hand and take the X ray with the other. The surgeon pointed out that Tina's thumb had been amputated because it had developed a malignancy. He also informed the trial commissioner that any return to work carried with it a risk to Tina's well being because of the risk to the left hand of "axillary metastasis."

The director rested without presenting any evidence, but his counsel asked for the "opportunity to have a medical examination." The denial of this request constitutes the director's final reason of appeal. The director contends that he has a right to demand a medical examination of any employee seeking Second Injury Indemnity Fund benefits. Tina relies upon our ruling in *Saccoccio* v. *Kaiser Aluminum & Chemical Corp.*, 107 R.I. 53, 264 A.2d 905 (1970), where we ruled that an employer may not require an employee to submit to the medical examination called for in §28-33-38 if, at the same time of the request and the employee's refusal, the employer is denying liability by insisting that the compensation act is inapplicable.

The full commission, in rejecting the director's claim of right, took a different tack. It ruled that there was no evidence that the director had asked Tina to be examined by a doctor of his choice or that Tina ever refused to submit to

---

[2] Doctor Jermiah told the trial commissioner that he had also treated Tina's sister, Anna. Anna also worked for the dentists. Her radiation burns were the subject of litigation in *Fontaine* v. *Gorfine*, 105 R.I. 174, 250 A.2d 361 (1969).

such an examination. The commission, in making these findings, has misconceived the evidence. When Tina's counsel was asked by the trial commissioner if counsel would agree to a continuance so that the examination could be held, the response was: "No, I object to it, Your Honor." We also believe that the request made by the director's counsel for a medical examination is the equivalent of a request made under §28-33-38. Nevertheless, this misconception is harmless.

Addressing ourselves to the rule of *Saccoccio,* we believe that the rule is inapplicable to a Second Injury Indemnity Fund claim because of our long-held belief that the Second Injury Indemnity Fund is in the nature of a trust fund having as its trustees the director, the General Treasurer, and the Attorney General. *Silva* v. *Devine,* 90 R.I. 120, 123, 155 A.2d 605, 607 (1959). Since §28-37-1 gives the director the primary responsibility for administering this trust, the director-trustee has the implicit power[3] to require a physical examination before he makes a definite finding about a claimant's eligibility. However, this right is not absolute. Just as inaction by the director in making a determination regarding benefits allows an employee to bypass him and present the claim directly to the commission, so too the director's failure to make a timely request for the examination cannot preclude the commission from making an independent determination on this issue. If the commission has doubts in regard to this issue, it may seek the opinion of the "impartial" physician referred to in §28-35-24.[4]

Here, the commission affirmed the trial commissioner's findings of Tina's continued total incapacity. Specifically, the trial commissioner, after alluding to and relying on Dr. Jeremiah's testimony, remarked: "[I]t is inconceivable to imagine any work that the petitioner would be capable of

---

[3]An examination of the compensation act reveals no express grant of this authority.

[4]While §28-35-24 requires the employer to bear the expense of the impartial examination, we believe that where Second Injury Indemnity Funds are involved, the expense should be charged against the fund.

performing in the labor market at the present time because of her injury." While we may fault the commission's reasoning about the presence of a request for a physical and the denial of that request, we cannot on the state of this record fault its approval of Tina's petition.

The director's appeal is denied and dismissed, and the decree appealed from is affirmed.

Mr. Justice Doris did not participate.

*Bernard W. Boyer*, for petitioner-appellee.

*Dennis J. Roberts II*, Attorney General, *Richard B. Woolley*, Special Assistant Attorney General, for respondent-appellant.