Richard BELLO

v.

ZAVOTA BROTHERS TRANSPORTATION COMPANY, INC.

Nos. 85–68–M.P., 85–69–M.P.

Supreme Court of Rhode Island.

Feb. 18, 1986.

Stephen M. Rappoport, Slepkow & Rappoport, East Providence, for plaintiff.

H. Rice, Rice, Dolan & Kershaw, Providence, for defendant.

## OPINION

SHEA, Justice.

These consolidated petitions for certiorari seek review of a Workers' Compensation Commission (commission) decree. The commission approved and awarded payment to the employee's companion who was providing necessary medical services pursuant to G.L.1956 (1979 Reenactment) §§ 28–33–5 and 28–33–8 of the Workers' Compensation Act. The employer challenges the commission's authority to render the award. The employee challenges the method by which the commission calculated the award. We affirm.

Richard Bello, employee, filed a petition to review a 1979 decree in the Workers' Compensation Commission. The petition to review alleged that employer, Zavota Brothers Transportation Company, Inc. (Zavota Brothers), refused to provide or pay for necessary medical services as is required by §§ 28–33–5 and 28–33–8. Among the services sought were nursing care at home, an air conditioner, and other related services.

The evidence established that Bello became a quadriplegic on April 3, 1978. His condition is the result of an injury that he sustained while employed by Zavota Brothers and for which he has been paid workers' compensation benefits. Bello was hospitalized until September 27, 1979. His friend Lorraine Bucci, a trained nurse's aide, brought him home to care for him there. Bello paid her $90 a week, plus room and board in exchange for her services as a live-in companion and care giver. He testified that he could not afford to pay her more than $90 a week.

Bello is confined to a wheel chair and unable to do very much for himself. He needs twenty-four-hour-a-day assistance. Bucci testified that she spent seventeen hours a day caring for Bello. She explained that this entailed assisting Bello out of bed in the morning, helping him to bathe, catheterizing him and evacuating his bowels as needed, preparing his food, doing

his shopping, administering his medication, applying splints to his hands each evening before bed, and adjusting his sleeping position every two hours during the night to prevent pressure sores. In addition, she ran Bello's household, doing all of the things that a homemaker or family member would do. Prior to working for Bello, she had worked as a nurse's aide at Golden Crest Nursing Home where she earned approximately $200 for a forty-hour work week.

Doctor Julius Stoll, a neurosurgeon, testified that Bello had been his patient since July of 1978. The doctor completely corroborated Bucci's description of Bello's medical condition and his ongoing needs. Doctor Stoll explained that he had prescribed an air conditioner to alleviate the muscle spasms Bello suffered when exposed to warm temperatures. According to Dr. Stoll, most of the duties performed by Bucci constitute medical care.

Dorothy Kelliher, a registered nurse, testified that she had visited Bello at his home to evaluate the kind of care that he would require. Her testimony also supported Bucci's description of the activities necessary to care for Bello properly. Kelliher believed that Bucci was doing an excellent job, and she added that if the Visiting Nurse Association were called upon to replace Bucci, it would send both a registered nurse and a nurse's aide to do the necessary work.

Finally, John Robinson, financial director of the Kent County Visiting Nurse Association, testified that during the period of Bucci's employment by Bello, the association's pay rate ranged from $8 per hour in September of 1979 to $15 per hour in February of 1983. Robinson acknowledged that these were the association's billing rates and that they reflected salaries, benefits, overhead, and profit.

The trial commissioner found that Bello had proven his need for care and for an air conditioner. The trial commissioner or-

dered that Bello be reimbursed the $90 per week that he had paid to Bucci since September 27, 1979, and awarded Bello $90 per week to pay for Bucci's ongoing services. The commissioner refused to order payment in excess of what he found to be the parties' agreed-upon rate of remuneration for Bucci's services.

On appeal the appellate commission stated:

"[i]t is clear from the record that Zavota is liable for the necessary medical services required by Bello as mandated by Sections 28–33–5 and 28–33–8. The simple issue here is in ascertaining the value of such services, namely, the proof of the reasonable value of the nursing care being rendered to Bello by Lorraine Bucci."

The appellate commission calculated the "reasonable compensation" due Bucci by multiplying the number of hours per day spent caring for Bello (seventeen), by the hourly wage she had received as a nurse's aide at Golden Crest Nursing Home ($5). The commission arrived at a weekly wage of $595. The appellate commission's final decree included the cost of the air conditioner and payment of $595 per week to Bucci retroactive to August 13, 1982, the date upon which Bello's attorney requested reimbursement from Zavota Brothers' insurer. Bello was awarded reimbursement for the $90 per week he had expended for Bucci's services between September 27, 1979, and August 12, 1982.[1]

The employer argues that the commission had no authority to alter the contractual agreement between Bucci and Bello by awarding compensation in excess of the $90 per week agreed upon by them. The employer further asserts that even if the commission did have this power, the evidence was insufficient to support the finding that Bucci performed compensable services seventeen hours per day, seven days per week.

---

**1.** This court granted employer's application for a stay of the payment of the $595 per week mandated by the final decree up until February 28, 1985, but not thereafter.

The employee contends that the commission had the authority to make the award but erred by undervaluing the worth of Bucci's services. He also argues that the award for the reasonable value of Bucci's services should have been made retroactive to September 27, 1979, the date upon which she began working for Bello.

Although the Workers' Compensation Commission is a statutory creature possessing only those powers granted by the Legislature, we have said that the provisions of the Workers' Compensation Act (the act) should be liberally construed to effect its purpose. *Volpe v. Stillman White Co.*, 415 A.2d 1034 (R.I.1980); *Orthopedic Specialists, Inc. v. The Great Atlantic & Pacific Tea Co.*, 120 R.I. 378, 388 A.2d 352 (1978). Also, it is well settled that this court is bound by the commission's findings of fact, providing that they are supported by competent legal evidence. *Emmett v. Town of Coventry*, 478 A.2d 571 (R.I.1984); *Shola v. Dworkin Construction Co.*, 474 A.2d 1252 (R.I.1984).

■ The act explicitly requires employers to provide or pay for injured employees' reasonable medical expenses and needs.[2] Section 28–33–8 also mandates that "[a]n injured employee shall at all times be entitled to treatment, care or rehabilitation by a physician, dentist or hospital of his own choice." We agree with the appellate commission's finding that Bucci's services to Bello come within the parameters of the act. The record is replete with testimony that Bucci performed services "necessary to relieve the employee from the effects of his injury." Section 28–33–5 specifically empowers the Workers' Compensation Commission to award payment for "reasonable" nursing services. Implicit in that power is the authority to determine the reasonable value of the service rendered. *See Jobin v. American Drilling &*

*Boring Co.*, 118 R.I. 480, 374 A.2d 799 (1977). Thus the commission acted within its statutory authority in reviewing the nature of the services provided by Bucci and awarding payment for their reasonable value. The sole issue before us, therefore, involves the commission's evaluation of the services rendered by Lorraine Bucci.

■ The employer contends that the evidence was insufficient to support the commission's finding that Bucci performed compensable services seventeen hours per day, seven days per week. There is no merit to this assertion. The testimony describing Bucci's activities was detailed, complete, and uncontradicted. The employer correctly argues that under *Tirocchi v. United States Rubber Co.*, 101 R.I. 429, 224 A.2d 387 (1966), Bucci's performance of household tasks such as cooking, cleaning, and shopping clearly are not compensable. However, Dr. Stoll and Dorothy Kelliher testified that Bello required around-the-clock care, and Kelliher went as far as to say that the Visiting Nurse Association would dispatch two people to perform the same job that Lorraine Bucci performed singlehandedly. The nature of Bello's condition as well as the compensable activities that Bucci was called upon to perform, such as dispensing medicine, showering and dressing him, assisting him with his bowel and bladder functions, adjusting his splints, and repositioning him every two hours during the night, required that she be in the home at Bello's disposal twenty-four hours per day. The fact that Bucci may not have been actively performing a strictly medical task at each and every moment of the day does not mean that she should not be compensated for her continuous attendance. This case is analogous to the situation in which a night nurse watches over a sleeping patient. The fact

**2.** General Laws 1956 (1979 Reenactment) § 28–33–5 provides in part:

"Medical services provided by employer. The employer shall, subject to the choice of the employee as provided in § 28–33–8, promptly provide for an injured employee

such reasonable medical, surgical, dental, optical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus for such period as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury * * *."

that the patient sleeps through the night does not support an argument that the nurse should not be paid for the night. He or she must be present and available to meet the patient's needs, not according to some preestablished timetable, but as the patient experiences them. The commission determined that seventeen of the twenty-four hours spent in Bello's service were compensable under the act. Although we need not so find, it could be argued that Bucci's housekeeping, cooking, and managerial services, in Bello's situation, amount to "attendance or treatment * * * necessary, in order to * * * relieve the employee from the effects of his injury * * *." Section 28–33–5. We conclude that the commission's finding is more than adequately supported by competent legal evidence in the record.

■ Bello asserts that the commission's award inadequately compensated Bucci for her services. Rather than utilize the $5 per hour wage Bucci had earned as a nurse's aide, Bello requests that this court substitute the hourly rates that the Visiting Nurse Association paid to nurse's aides. Not surprisingly, those rates are substantially higher than the commission's award. Our review of the record convinces us that Lorraine Bucci provides excellent care for Bello for which she should receive adequate compensation. However, the act only requires that the award for medical services be reasonable. That Bucci could have been paid more by another employer is irrelevant. This court must defer to the commission's factual findings unless they are tainted by fraud or unsupported by competent legal evidence. *Emmett v.*

*Town of Coventry,* 478 A.2d 571 (R.I.1984). Finding neither to be the case here, we decline to interfere with the commission's judgment. Although the appellate commission's method of computing the value of Bucci's service reflects only one of several possibilities,[3] it certainly was "reasonable" within the meaning of the act. We are persuaded that the appellate commission's conclusions find support in the record and its factual findings and legal conclusions should be affirmed.

■ Bello claims that the commission erred by failing to award reasonable compensation for the full duration of Bucci's service, which began on September 27, 1979, even though he did not formally request reimbursement for the value of her services until August 13, 1982. The appellate commission, in determining that the reasonable value of the care was $595 per week, was within its authority to render the award prospectively from the date of demand. We will not disturb its decision to do so.

For these reasons, the petitions for certiorari are denied, the writs heretofore issued are quashed, and the papers of this case are remanded to the Workers' Compensation Commission with our decision endorsed thereon.

---

3. We note that Bello's suggested figures show the very lack of precision that he maintains rendered the commission's award inaccurate. The Visiting Nurse Association billing rates re-

flect salaries, overhead, benefits, and profit, and the Golden Crest rate may reflect built-in factors such as seniority and vacation and health benefits.