**GILBANE COMPANY**

v.

**William POULAS et al.**

**No. 89-30-M.P.**

Supreme Court of Rhode Island.

June 15, 1990.

Anthony DiPetrillo, Elaine Giannini, Providence, for plaintiff.

Gerard S. Lobosco, Providence, Sharon O'Keefe (Workers' Compensation), for defendant.

## OPINION

FAY, Chief Justice.

This case comes before us on the petition for writ of certiorari of Robert A. Antignano in his capacity as the director of the Department of Workers' Compensation (director). The director asks us to review the decree of the Workers' Compensation Appellate Commission granting reimbursement to Gilbane Company (Gilbane), through its insurer Aetna Casualty and Surety Company, from the Second Injury Indemnity Fund for workers' compensation payments made to William Poulas (Poulas). We affirm in part and quash that portion of the decree ordering reimbursement from the Second Injury Indemnity Fund.

The undisputed facts are as follows. On March 27, 1970, while in the employ of Damiano Brothers Welding Company, Incorporated (Damiano Brothers), Poulas sustained severe work-related injuries. Damiano Brothers provided Poulas with workers' compensation benefits during his incapacity. In May 1983 Gilbane hired Poulas as a steel worker. At the time of hire Nicholas Poulas, William's brother, was Gilbane's steel foreman. Shortly thereafter, on June 3, Poulas suffered a second work-related injury, at the Fleet Center Project in Providence. Poulas received 104

weeks of workers' compensation for this injury.

Gilbane, through Aetna, filed an Employer's Petition to Review Agreement or Decree Concerning Compensation with the Workers' Compensation Commission seeking reimbursement from the Second Injury Indemnity Fund established by G.L.1956 (1986 Reenactment) § 28–37–1. A hearing before the trial commissioner took place on November 14, 1986. After the presentation of testimony the trial commissioner dismissed the petition for Gilbane's failure to comply with the requirements of § 28–37–4(d) in that it did not make a written record of Poulas's first injury at the time of hire. The record reveals that the only written evidence showing knowledge of the earlier injury was set down in a letter from Gilbane to Aetna dated two years after the second work-related injury.

On appeal to the Workers' Compensation Appellate Commission, Gilbane argued that § 28–37–4(d) does not mandate the creation of written records contemporaneous with the time of hire. The appellate commission agreed with Gilbane and reversed the decree of the trial commissioner. The director then petitioned this court for review. For the following reasons we agree with the appellate commission.

■ Chapter 37 of title 28, of the Rhode Island General Laws establishes the Second Injury Indemnity Fund. The purpose of the fund is "to encourage the employment of disabled employees by limiting the liability of employers for compensation and medical charges when an injury to an employee merges with a preexisting injury to cause a greater disability or loss of earnings than would have resulted from the injury alone." Section 28–37–4(a). The fund has been described as a kind of trust fund, and both statutory and decisional law mandate the liberal construction of its provisions. *See Fontaine v. Caldarone*, 122 R.I. 768, 771, 412 A.2d 243, 245 (1980); § 28–37–4(a).

■ The specific provision at issue in the case before us, § 28–37–4(d), reads:

"In order to qualify under this section for reimbursement from the special fund, the new employer must establish by written records that the new employer had knowledge of the preexisting disability at the time that the employee was hired, or if that knowledge was acquired thereafter, that the employee was retained in employment after the employer acquired that knowledge; Provided, however, That if the employee fails to disclose a prior injury for which compensation was paid, the employer shall qualify for reimbursement under this section."

The director asserts that this section should be construed as requiring an employer to establish a written record of an employee's preexisting disability at the time of hire.

■ When charged with the duty of statutory construction, one must read the language so as to effectuate the legislative intent behind its enactment. *In re Advisory Opinion to the Governor*, 504 A.2d 456, 459 (R.I.1986). If the language is clear on its face, then the plain meaning of the statute must be given effect. *Id.* The statute before us does not require a search for the discernment of legislative intent as we believe the language is unambiguous. Section 28–37–4(d) requires knowledge *at the time* of hire and cannot be construed to mandate the creation of written records contemporaneous with the time of hire. Such a construction would operate as a disservice to the purpose of the Second Injury Indemnity Fund as well as contravene the obvious intent of the Legislature. If establishment of contemporaneous written records was the Legislature's desired mandate, the statute would have been drafted accordingly. We shall not read such a stringent requirement into a legislative enactment when it does not plainly exist.

■ The director alternatively contends that a letter written from Gilbane to its insurer is insufficient evidence to support knowledge of a preexisting condition. In support of this position the director relies upon *Griffin v. Civetta & Sons*, 71 A.D.2d 744, 419 N.Y.S.2d 254 (1979), in which the New York Supreme Court, Appellate Divi-

sion, faced a similar factual situation. In *Griffin* the employer's job superintendent signed a letter prepared by the employer's insurance carrier attesting to his knowledge of the employee's preexisting injury. *Id.* at 744, 429 N.Y.S.2d at 255. The court found this action insufficient evidence to support the knowledge requirement of New York's Special Disability Fund because the superintendent also testified that not only did he not remember the employee as having a back problem but he also only signed the statement at the request of the carrier. *Id.* Affirming the decision of the Workers' Compensation Board, the court stated that "[u]nder these circumstances, we cannot say that the board acted unreasonably in discrediting the signed statement and placing little reliance upon [the superintendent's] vague testimony * * *." *Id.*

The situation before us, however, is clearly distinguishable from that in *Griffin*. Gilbane's steel foreman, responsible for hiring and firing, was Poulas's brother. Nicholas Poulas testified that he was aware of the substantial injury William sustained in the 1970 work-related incident. This testimony, coupled with the letter written to Aetna, is credible evidence supporting the existence of knowledge of Poulas's injury and subsequent hiring in spite of the knowledge. Therefore, the appellate commission's finding that the predicate to eligibility under the Second Injury Indemnity Fund, knowledge of a preexisting injury, is correct.

The record, however, is devoid of any evidence to satisfy the requirements of § 28–37–4(b) and § 28–37–4(e), the aggravation of a preexisting condition. The appellate commission was therefore premature in ordering compensation until the remaining prerequisites of the statute were met.

For the foregoing reasons the director's petition for certiorari is granted, the decree of the appellate commission is affirmed in part, and that portion of the decree ordering reimbursement from the Second Injury Indemnity Fund is quashed, and the papers in this case are remanded to the Workers'

Compensation Commission with our decision endorsed thereon for an evidentiary hearing on the satisfaction of the remaining requirements of § 28–37–4.