**JOHN MARANDOLA PLUMBING & HEATING COMPANY**

v.

**DELTA MECHANICAL, INC.**

**No. 98–465–Appeal.**

Supreme Court of Rhode Island.

April 23, 2001.

Joseph Avanzato, Edward L. Maggiacomo, Marc B. Gursky, Providence, Thomas R. Landry, for Plaintiff.

William E. O'Gara, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This is a private cause of action brought pursuant to G.L.1956 § 9–1–52, entitled "Cause of action for next lowest bidding qualified contractor." The plaintiff, John Marandola Plumbing and Heating Compa-

ny (Marandola), appeals from the entry of summary judgment in favor of the defendant, Delta Mechanical, Inc. (Delta). After a hearing on the parties' cross-motions for summary judgment, the trial justice found that although Delta had violated G.L.1956 chapter 13 of title 37 (the prevailing wage law), Marandola had failed to show damages as a result of Delta's violation in accordance with § 9–1–52; consequently, he entered summary judgment in favor of Delta. In its appeal, Marandola asserts that the trial justice applied a legally erroneous standard in passing upon the motion, and that because there existed genuine issues of material fact, entry of summary judgment was precluded.

### Facts/Procedural History

The facts in this case essentially are undisputed. Sometime prior to April 1994, the East Greenwich School Department (School Department) awarded a contract to Gilbane Building Company (Gilbane) to perform a wide range of renovations to the town's public schools. Rather than impose a maximum cost cap for each individual project, a guaranteed maximum total cost cap was imposed upon the entire contract. Thereafter, Gilbane prepared bid packages to contract out some of the individual projects within the contract.

In April 1994, Gilbane presented Bid Package No. 15A requesting bids for HVAC (Heating, Ventilation and Air Conditioning) and plumbing work (the project) to be done at the schools. The bid form required each bid to include, among other things, a price for installing direct digital controls, upgrading automatic temperatures and rebuilding unit ventilators (bid requirements). On June 2, 1994, Delta and Marandola both submitted bids in response to Bid Package No. 15A. Delta's bid totaled $888,000, but did not include the previously mentioned bid require-

ments; Marandola's bid totaled $1,544,777, and included the bid requirements.

On June 10, 1994, Gilbane's chief purchasing agent, Phillip Leffert (Leffert), wrote to the East Greenwich Superintendent of Schools, David Connolly (Connolly), recommending that the contract be awarded to Delta. Specifically, his recommendation stated that Delta's "award amount compares to our control budget of ($1,129,000)." Gilbane and Delta entered into a contract on June 23, 1994, to perform the project. Later that year, the Rhode Island Foundation for Fair Contracting filed a complaint with the Rhode Island Department of Labor (the department) alleging that Delta had violated the prevailing wage law with respect to the project. An investigation into the allegation ensued.

After reviewing Delta's payroll records, the department found Delta to be in conformance with the prevailing wage law; however, it determined that Delta's method of calculating overtime benefits did not conform with the methods employed by the department. On October 5, 1995, Delta signed a consent order with the department, agreeing to pay a total of $3,386.85, plus interest, in unpaid overtime payments to twenty of its employees.

On February 5, 1997, the plaintiff filed the instant action pursuant to § 9–1–52. In its complaint, Marandola asserted that because Delta had violated the prevailing wage law, it was entitled to damages as the next-lowest bidder on the project. Marandola then filed a motion for partial summary judgment on the issue of liability. Delta responded by filing a cross-motion for summary judgment, asserting that even if it had violated the prevailing wage, Marandola never would have been awarded the contract, and therefore it could not have suffered any damages. After hearing the arguments of counsel, the

trial justice found that Delta had violated the prevailing wage law. However, he also held that because Marandola was unable to show that it would have been awarded the contract, it could not show that it had suffered any damages. Consequently, the trial justice entered summary judgment in favor of Delta and dismissed Marandola's complaint. Marandola appeals.

### Analysis

Marandola maintains that pursuant to § 9–1–52, it was required to prove only that: (1) Delta was the successful bidder; (2) Delta subsequently violated the prevailing wage law; (3) Marandola was the second-lowest qualified bidder; and (4) the amount of Marandola's damages. It contends that the trial justice erred by requiring Marandola to prove an additional element not contained in the statute; namely, but for Delta's bid, it would have been awarded the contract. Consequently, Marandola asserts that the trial justice improperly granted Delta's cross-motion for summary judgment. In addition, Marandola avers that even if the trial justice applied the proper legal standard, genuine issues of material facts existed that should have precluded the granting of summary judgment.

■■■ "When reviewing a summary judgment, we do so on a de novo basis, applying the same legal criteria as the trial court." *Kiley v. Patterson,* 763 A.2d 583, 585 (R.I.2000). "Only when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's order granting summary judgment." *Id.* (quoting *J.R.P. Associates v. Bess Eaton Donut Flour Co.,* 685 A.2d 285, 286 (R.I.1996)). Like our "prerogative to affirm a determination of a trial justice 'on

grounds different from those enunciated in his or her decision[,]' " we also have the prerogative to overturn the trial justice's determination on different grounds. *Ogden v. Rath,* 755 A.2d 795, 798 (R.I.2000) (quoting *State v. Pena Lora,* 746 A.2d 113, 118 (R.I.2000)).

■■■ In this case, we are called upon to interpret § 9–1–52 for the first time. "Statutory interpretations by a trial justice present questions of law that this Court reviews de novo." *Skaling v. Aetna Insurance Co.,* 742 A.2d 282, 290 (R.I.1999). "In construing statutes, this Court 'adhere[s] to the basic proposition of establishing and effectuating the intent of the Legislature[, * * * which] is accomplished from an examination of the language, nature, and object of the statute.' " *State v. Pelz,* 765 A.2d 824, 829–30 (R.I.2001) (quoting *Howard Union of Teachers v. State,* 478 A.2d 563, 565 (R.I.1984)). "If the language of a statute is clear on its face, then its plain meaning must generally be given effect." *Skaling* 742 A.2d at 290 (citing *Gilbane Co. v. Poulas,* 576 A.2d 1195, 1196 (R.I.1990)).

■■■ The prevailing wage law requires contractors and subcontractors to pay their employees the prevailing wage, as defined by the director of the Department of Labor, in the locality where the project is to be performed for public works projects in which the contract price is in excess of $1,000. *See* § 37–13–3. " '[T]he primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector.' " *J.A. Croson Co. v. J.A. Guy, Inc.,* 81 Ohio St.3d 346, 691 N.E.2d 655, 659 (1998). "Except as otherwise provided * * * any employer who shall violate or fail to comply with [the prevailing wage law] shall be guilty of a misdemeanor * * *." Section 37–13–12.4.

Besides the penalties provided by the prevailing wage law, § 9–1–52 creates a private, third-party cause of action to recover damages against violating or non-complying employers for the next-lowest qualified bidder. Section 9–1–52 provides in its entirety that:

"Whenever a contractor or subcontractor, having been awarded the contract as the lowest qualified bidder, violates the state's prevailing wage, a cause of action shall be for the next lowest qualified bidder for any and all damages incurred as the result of not being awarded the contract."

By enacting this statute, the Legislature provided employers an additional financial disincentive to violate the prevailing wage law.

Marandola contends that the plain meaning of § 9–1–52, as applied to the undisputed facts in this case, can result in only one conclusion: that Delta was the lowest qualified bidder when it violated the prevailing wage law, and that Marandola, as the next-lowest qualified bidder, automatically is entitled to any and all demonstrable damages it incurred as the result of not being awarded the contract.[1] Such a conclusion suggests that as the successful bidder, Delta necessarily was the "lowest qualified bidder," and that as the next-lowest bidder, Marandola also was "qualified" within the meaning of the statute.

Section 9–1–52 does not define the term "qualified bidder." General Laws 1956 § 37–2–15(7) defines a "responsive bidder or offeror" as:

"a person who has submitted a bid or offer which conforms in all material respects to the invitation for bids or proposals, so that all bidders or offerors

may stand on equal footing with respect to the method and timeliness of submission and as to the substance of any resulting contract."

A "responsible bidder or offeror" is defined as:

"a qualified bidder or offeror who has the capability in all respects, including financial responsibility, to perform fully the contract requirements, and the integrity and reliability which will assure good faith performance." Section 37–2–15(6).

Qualified is defined as "[p]ossessing the necessary qualifications; capable or competent." Black's Law Dictionary 1254 (7th ed.1999).

In the present case, Gilbane sought bids in response to Bid Package No. 15A. It set a control budget of $1,129,000 and insisted that certain requirements be included in each bid. Only Delta and Marandola responded to the bid invitation. Delta's bid failed to include some of the mandatory requirements; Marandola's bid exceeded the control budget by more than $415,000. Consequently, it is questionable whether either party was a qualified bidder within the meaning of § 9–1–52, much less that they were the lowest and next-lowest qualified bidders, respectively. However, the record reveals that Delta's bid was accepted, despite its deficiencies.

Given that Delta's bid actually was accepted, it is reasonable to presume that Gilbane and the School Department reassessed their requirements and, in light of those changes, considered Delta to be the lowest qualified bidder. Thus, the fact that mandatory requirements were overlooked in the awarding of the contract to Delta raises the presumption that Marandola's bid also may have been qualified.

---

1. In such actions, the damages, if any, at a minimum would include the cost of preparing the bid and of the bond issue.

Like all presumptions, however, Marandola's status as the next lowest "qualified bidder" was rebuttable.

During the hearing below, Delta produced various affidavits to show that Marandola never would have been awarded the contract. Those affidavits, from school Superintendent Connolly and from various Gilbane employees, essentially stated that Marandola's bid was not acceptable, it would have been rejected but for the acceptance of Delta's bid, and that new bids would have been solicited in its place. No affidavit ever was produced from the municipal entity with the final say on the matter, namely, the East Greenwich School Committee. Thus, although Delta's affidavits may constitute an attempt to rebut the presumption that Marandola was the next-lowest qualified bidder, they do not achieve that objective. A genuine issue of material fact still exists about whether the school committee would have rejected Marandola's bid.

Accordingly, we sustain the appeal, vacate the order granting summary judgment, and remand the case to the Superior Court for a trial on the merits.