DECISION
Before this Court is an appeal by Mitkem Corporation (Mitkem) of the Department of Environmental Management's (DEM) decision refusing to certify that Mitkem qualifies for the sales and use tax exemption provided by G.L. 1956 § 44-18-30(15). Mitkem seeks reversal of DEM's decision. Jurisdiction is claimed pursuant to R.I.G.L. 1956 § 42-35-15.
 Facts/Travel
On April 25, 2000, Mitkem requested that DEM certify that its analytical testing laboratory located at 175 Metro Center Boulevard, Warwick, RI, qualified for a sales and use tax exemption under G.L. 1956 § 44-18-30(15). The exemption would cover the period from March 4, 1994 through December 31, 1999. Mitkem represented in its request that the facility was incorporated and its assets used for the primary purpose of aiding in the control of water and air pollution in this state. DEM must certify that the facility meets the requirements of G.L. 1956 §44-18-30(15) in order for Mitkem to claim the exemption.
On July 24, 2000, DEM denied Mitkem's request for certification stating that it had never evaluated or had opportunity to evaluate property and supplies acquired by an independent analytical laboratory under R.I.G.L. § 44-18-30(15) and that it historically interpreted R.I.G.L. 1956 § 44-18-30(15) as being intended to provide tax relief for equipment that is required or regulated by permit.
On October 20, 2000, Mitkem requested that DEM reconsider its initial denial of certification. DEM denied Mitkem's request for reconsideration on April 2, 2001.
On May 1, 2001, Mitkem filed a complaint in this Court appealing DEM's decision of April 2, 2001.
 Jurisdiction
Section 42-35-15(a) provides "that any person who has exhausted all administrative remedies available within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter." A contested case is "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for a hearing." R.I.G.L. 1956 § 42-35-1(c). No hearing was held. While arguably this Court possesses jurisdiction to review DEM's decision, if it constitutes a final order, there is no evidence in the record or findings of fact to review.
In its letter to defendant of April 25, 2000, Mitkem requested a determination pursuant to R.I.G.L. § 44-18-30(15) that the tangible personal property and supplies listed on "Exhibit A" attached thereto were acquired for incorporation into or used and consumed in the operation by the corporation of its testing laboratory in Warwick, R.I. during the period commencing March 4, 1994 through December 31, 1999 and qualified for the sales and use tax exemption provided by R.I.G.L. §44-18-30(15). Mitkem stated that it would `not go into detail describing the testing activities the corporation conducts . . . since it was obvious from the discussions during the meeting that you . . . are very familiar with the work done . . . and the role those testing activities play in aiding the control of air and water pollution in this state." Mitkem went on to represent that "the assets in question were incorporated into or used and consumed at the facility in connection with the testing activities conducted at that location, that the primary purpose of the testing activities . . . has been and continues to be to aid in the control of the pollution or contamination of the water or air of the state, and that approximately 70% of the testing . . . during this period related to sites located in Rhode Island and contiguous states." Further, Mitkem represented that approximately 30% of the work performed at the facility related to remediation, 70% related to investigation and less than 1% of the work related to abatement," which totals more than 100%.
According to Mitkem, the property listed on "Exhibit A" cost approximately $1,391,662 and the supplies consumed cost approximately $1,969,007 and included bottles, chemicals, lab glassware and gases.
Exhibit A listed equipment without invoices, dates of purchase, cost, specific function or use. There were no specifics provided on supplies consumed.
The Defendant in its response of July 24, 2000 stated, inter alia, that "we have never evaluated, or had opportunity to evaluate property and supplies acquired by an independent analytical laboratory under this statute. Historically, the requests evaluated and certified by DEM under this program have been for purchases made by manufacturers for equipment directly added to their operations for purposes of pollution control." DEM did not challenge or question plaintiff's representations or seek to evaluate Mitkem's property and supplies.
R.I.G.L. § 45-35-15(g) provides, inter alia, "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may . . . remand the case for further proceedings. . . ."
Other than the representations of Mitkem, there is no evidence in the record or findings of fact by the agency on such essential issues as: (1) was or is Mitkem a water or air pollution control facility; (2) what personal property or supplies were acquired for incorporation into or used and consumed in the operation of Mitkem; (3) when acquired; (4) what use was made of the property and supplies; (5) when was the property used and consumed; (6) how did this aid in the control of the pollution or contamination of the water or air of the state; (7) what was the purpose of the operation of Mitkem for each year it seeks certification; (8) was the property or supplies acquired for incorporation into or used and consumed in the operation of Mitkem. This list is not meant to be exclusive or all inclusive but rather illustrative only, bearing in mind that statutes that ". . . purport to exempt property from taxation are to be strictly construed against the taxpayer, and in favor of the public, unless by their terms they disclose a clear intention to grant an exemption." Dart Industries v. Clark, 696 A.2d 306 (R.I. 1997) (citing American Hoescht Corporation v. Norberg, 462 A.2d 369, 371 (R.I. 1983)). The burden of proof is on the taxpayer to prove that it is entitled to the exemption claimed. Rhode Island Lithograph Corporation v. Clark,519 A.2d 589 (R.I. 1987).
Because the record is devoid of any evidence or findings of fact, this case is remanded to the agency for further proceedings; to take evidence, make findings of fact, conclusions of law, and a decision in accordance therewith. Thereafter, plaintiff may seek further review by this Court.
Counsel shall submit an appropriate order for entry after notice.
 Standard of Review
The scope of the Superior Court's review of administrative decisions is confined by G.L. 1956 § 42-35-15(g) which provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other errors or law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing administrative decisions, the Court will not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Carmody v. Rhode Island Conflict of Interest Com'n, 509 A.2d 453, 458 (R.I. 1986). The Court will also accord deference "` to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency * * * even when the agency construction is not the only permissible interpretation that could be applied.'" Parkway Towers Associates v. Godfrey 688 A.2d 1289, 1294 (R.I. 1997) (quoting Defenders of Animals, Inc. v. Department of Environmental Management, 553 A.2d 541, 543 (R.I. 1989)). While deference will be afforded an agency's statutory construction, the Court is not bound by agency determinations of questions of law and will review agency interpretations of questions of law under a de novo standard. Carmody, 509 A.2d at 458 (R.I. 1986); Pawtucket Power Associates Ltd. Partnership v. City of Pawtucket, 622 A.2d 452, 456 (R.I. 1993).
 Statutory Construction
It is within the power of the General Assembly to provide tax incentives to promote the control of water and air pollution. Section 44-18-30 of the Rhode Island General Laws provides a list of exemptions from the sales and use tax. Among these exemptions is G.L. 1956 § 44-18-30(15) for air and water pollution control facilities. This section provides an exemption from
 "the sale, storage, use, or other consumption in this state of tangible personal property or supplies acquired for incorporation into or used and consumed in the operation of a facility, the primary purpose of which is to aid in the control of the pollution or contamination of the waters or air of the state, as defined in chapter 12 of title 46 and chapter 25 of title 23, respectively, and which has been certified as approved for that purpose by the director of environmental management. The director of environmental management may certify to a portion of the tangible personal property or supplies acquired for incorporation into those facilities or used and consumed in the operation of those facilities to the extent that portion has as its primary purpose the control of the pollution or contamination of the waters or air of this state."
In construing G.L. 1956 § 44-18-30(15), DEM found, that in order for it to have the statutory authority to certify Mitkem's facility as being approved for the exemption, Mitkem must show that more than 50% of the water and air that it tests has its origin in Rhode Island. (Exh. 4.) This threshold showing that 50% of the water and air Mitkem tests is from Rhode Island sources, DEM determined, must be satisfied in order for it to have the statutory authority to conclude that the "primary purpose" of the facility was to control the water and air pollution of this state. Thus, the issue is one of statutory construction.
It is axiomatic that statutes are to be construed in accordance with their plain meaning. John Marandola Plumbing Heating Co. v. Delta Mech., Inc., 769 A.2d 1272, 1275 (R.I. 2001). Moreover, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v. DiCicco, 707 A.2d 251, 253 (R.I. 1998) (quoting Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). The plain language of G.L. 1956 § 44-18-30(15) requires that the taxpayer show that the "primary purpose" of the facility is to aid in the control of the pollution of the waters of this state. "Primary" is defined as something that stands first in order, rank or importance. WEBSTER'S INTERNATIONAL DICTIONARY 1800 (2d. Ed. 1983); RANDOM HOUSE DICTIONARY 1537 (2d Ed. 1987). Furthermore, Black's Law Dictionary defines primary as "that which is first in intention; which is fundamental. The principal or fixed intention with which an act or course is undertaken." BLACK'S LAW DICTIONARY 1190 (6th Ed. 1990).
The plain meaning of the word "primary" requires that something be fundamental, critical, essential or elementary, but the ordinary meaning of the term does not require a majority or specific percentage to satisfy the definition. O.L. Gragg v. Cayuga Ind. School Dist., 539 S.W.2d 861, 868 (Tex. 1976) (stating that the word "primary" is not a synonym for majority); William C. Burton, LEGAL THESAURUS 864-865 (2d. ed 1992) (listing the synonyms for primary none of which include majority or predominate).
While DEM states that tax exemptions are to be narrowly construed and that the burden is on the taxpayer to establish an entitlement to an exemption, Rhode Island Lithograph Corp. v. Clark, 519 A.2d 589, 591 (R.I. 1987), here, the use of the word "primary" by the legislature indicates that the legislature intended to grant an exemption without a showing that 50% of the use of the property and supplies was used to analyze samples taken in Rhode Island. Dart Industries, Inc. v. Clark,696 A.2d 306, 310 (R.I. 1997) (stressing that the rule of strict construction does not permit the frustration of a clear legislative intent to grant an exemption). Consequently, a company or taxpayer could satisfy the requirement that the primary purpose of its equipment is to aid in the control of pollution in Rhode Island without necessarily meeting the 50% threshold required by DEM.
The Court will defer to a reasonable construction of a statute by an agency charged to administer the statute even if the Court disagrees with the agency interpretation. Parkway Towers Assoc. v. Godfrey, 688 A.2d 1289, 1294 (R.I. 1997). However, in the instant matter, because the ordinary meaning of "primary" is not synonymous with 50%, the DEM's interpretation of the statute is clearly erroneous and must be reversed. The agency interpretation, in this respect, is rendered unreasonable because it is contrary to the plain meaning of "primary." Commerce Clause Mitkem argues that DEM's interpretation of the statute would violate the Commerce Clause because it would favor in-state over out of state activity by restricting the exemption to facilities that each establish that more than 50% of their business is testing water samples that originate in Rhode Island. DEM, on the other hand, asserts that its interpretation does not discriminate against inter-state commerce and that the United States Supreme Court cases concerning franchise taxes, excise taxes, waste disposal fees and peddler's licenses do not apply to the issue of tangible property exemptions from sales and use taxes predicated on pollution control within state.
It is a principle of statutory construction that the Court will construe statutes in order to avoid rendering them unconstitutional. State v. Fonseca, 670 A.2d 1237, 1240 (R.I. 1996) (stating that the Court will presume a legislative enactment to be constitutional and valid and will so construe the enactment whenever such a construction is reasonably possible). Here, the DEM's interpretation of G.L. 1956 § 44-18-30(15), requiring Mitkem to demonstrate that 50% of the waters it tests orginate in Rhode Island violates the Commerce Clause of the United States Constitution.
The Commerce Clause reads: "The Congress shall have the power to regulate commerce with foreign Nations, and among the several States and with Indian Tribes." U.S. Const. art.I, § 8, cl. 3. The United States Supreme Court has stated that the "Commerce Clause not only grants Congress the authority to regulate commerce among the states, but also directly limits the powers of the states to discriminate against interstate commerce." New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302, 308 (1988). This "negative aspect of the Commerce Clause prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." Id. Thus, the Commerce Clause precludes a state from taxing a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the state. Chemical Waste Management, Inc. v. Hunt, 504 U.S. 334, 342, 112 S.Ct 2009, 2014, 119 L.Ed.2d 121, 132 (1992). Moreover, the Court has noted that tax discrimination can come in the form of denying a taxpayer a generally available tax benefit or imposing a specific penalty on an activity. New Energy Co., 486 U.S. at 275; 108 S.Ct. at 1808; 100 L.Ed.2d at 309. If a tax is found facially to discriminate against out-of-state commerce, the court will apply the "`strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives.'" Chemical Waste Management, Inc., 504 U.S. at 342-43; 112 S.Ct. at 2014; 119 L. 10 Ed. 2d at 132 (quoting Hughes v. Oklahoma,441 U.S. 322, 337, 60 L.Ed.2d 250, 99 S.Ct. 1727 (1979)).
In reviewing the DEM's interpretation of G.L. 1956 § 42-18-30(15), this Court must determine whether requiring Mitkem to show that more than 50% of the water and air it tests is from Rhode Island is an evenhanded regulation of interstate commerce, with only incidental effects on commerce or whether it discriminates against interstate commerce. Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 114 S.Ct. 1345, 1367; 128 L.Ed.2d 13, 34 (1994). Discrimination simply means different treatment of in-state and out-of-state economic interests. Id. In the instant matter, DEM's interpretation of "primary purpose" violates the Commerce Clause because Mitkem's ability to qualify for the sales and use tax exemption turns solely on the amount of water and air it tests from neighboring states. DEM's interpretation of the statute does not measure the extent to which Mitkem's equipment and facilities control water and air pollution in Rhode Island. Instead, DEM is adding a requirement to the statute that the equipment and facilities must benefit Rhode Island more than neighboring states. Consequently, if Mitkem did not test any waters in Massachusetts and Connecticut, under the DEM's interpretation, Mitkem would be eligible for the exemption even though the extent to which the facilities and equipment aid in the control of water and air pollution in Rhode Island would be the same.
In Camps Newfound/Owatonna, Inc. v. Harrison, 520 U.S. 564, 575, 117 S.Ct. 1590, 1601, 137 L.Ed.2d 852, 863 (1997), the United States Supreme Court struck down a Maine statute that limited the exemption that a benevolent and charitable corporation could take if the institution were conducted or operated principally for the benefit of nonresidents. The Court stated that the "Maine law expressly distinguishes between entities that serve principally interstate clientele and those that primarily serve an intrastate market, singling out camps that serve mostly in-staters for beneficial tax treatment, and penalizing those camps that do a principally interstate business." Id. The Court asserted that as a "practical matter, the statute encourages affected entities to limit their out-of-state clientele." Id.
Similarly, in Chemical Waste Management, Inc. v. Hunt, 504 U.S. 334, 112 S.Ct 2009, 119 L. Ed. 2d 121 (1992), the court invalidated Alabama's hazardous waste disposal fee imposed on waste generated outside the state. The court stated that the only reason for the additional fee was the origin of the waste and that the state must establish a reason apart from the origin of the waste to impose the additional fee. Id. at 344; 112 S.Ct. at 2016; 119 L.Ed.2d at 135.
Similiar to the interpretation of statutes the United States Supreme Court found violative of the Commerce Clause in Camps Newfound/Owatonna and Chemical Waste Management, DEM's construction of this statute would also violate the Commerce Clause by penalizing Mitkem for testing water on an interstate scale rather than limiting its operations to Rhode Island. Thus, like the statute in Camps Newfound/Owatonna, G.L. 1956 § 42-18-30(15), as interpreted by DEM, encourages Mitkem to reduce the amount of water it tests in Massachusetts and Connecticut in order to fall within the exemption. Additionally, DEM denies the exemption to Mitkem solely on the basis of the origin of the waters being tested. Under the reasoning of Chemical Waste, DEM cannot deny Mitkem an exemption based on the percentage of water it tests from Rhode Island as compared to from other states.
Because the Commerce Clause precludes DEM from construing the statute in a way that makes the exemption hinge on the amount of out-of-state waters being tested, DEM's interpretation of "primary purpose" is clearly erroneous. DEM's interpretation of G.L. 1956 § 44-18-30(15) is facially discriminatory and would be subject to strict scrutiny under the Commerce Clause. As statutes are to be construed in a way that avoids rendering them unconstitutional, Bouchard v. Price, 694 A.2d 670, 677 (R.I. 1997), the DEM's interpretation of "primary purpose" is clearly erroneous.
 Division of Taxation
DEM asserts that the appropriate avenue for challenging a tax exemption is to petition the Tax Administrator for a refund or abatement of paid taxes. Mitkem argues that the Director of Environmental Management is solely responsible for certifying that the facilities meet the requirements of the exemption. Section 44-18-30(15) of Rhode Island General Laws states that the Director of Environmental Management may certify that tangible personal property or supplies acquired for incorporation are used and consumed in the operation of a facility the primary purpose of which is to aid in the control of the pollution or contamination of the waters of this state. According to the plain meaning of the statute, DEM is given the authority to certify that the property qualifies for the exemption. Therefore, the Division of Taxation is not an indispensable party and does not have to be joined.
 Conclusion
After review of the entire record, this Court finds that the agency decision is affected by errors of law and is in violation of constitutional provisions. Accordingly, the matter is remanded to the agency for a determination of whether the primary purpose of Mitkem's facility is to aid in the control of water and air pollution in Rhode Island without using a bright line test of whether 50% of the waters tested originated from Rhode Island. If DEM finds that a principal or fundamental intention of the facility is to aid in the control of water and air pollution in Rhode Island, then the exemption must be granted regardless of the degree to which the facility aids in pollution control of bordering states.
Counsel shall submit the appropriate order for entry after notice.