June 28, 2024

**Supreme Court**

Newport School Committee :

v. : No. 2021-37-M.P.
(PC 19-4024)

Rhode Island Department of :
Education et al.

Cumberland School Committee :

v. : No. 2021-38-M.P.
(PC 20-31)

Rhode Island Council on Elementary :
and Secondary Education et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Newport School Committee : 

v. : No. 2021-37-M.P.
(PC 19-4024)

Rhode Island Department of :
Education et al.

Cumberland School Committee :

v. : No. 2021-38-M.P.
(PC 20-31)

Rhode Island Council on Elementary :
and Secondary Education et al.

Present:  Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**PER CURIAM.**  These consolidated cases came before the Supreme Court pursuant to writs of certiorari issued upon petitions by the defendant, the Department of Children, Youth, and Families (DCYF), seeking a review of a Superior Court judgment in favor of the plaintiffs, Newport School Committee (Newport) and Cumberland School Committee (Cumberland) (collectively, plaintiffs).  These cases arise out of the plaintiffs' decision not to reimburse DCYF at the "per-pupil special-education" rate for the cost of educating children who were placed in residential treatment programs by DCYF, but who were not receiving special-education services.  In 2018 the Family Court placed two children, A. Doe

and M. Doe, in the temporary custody of DCYF.[1]  The Family Court designated Newport and Cumberland, respectively, as the residences of the children's custodial parents for the purpose of determining the municipalities' financial responsibility for the children's education.  DCYF subsequently placed A. Doe at Harmony Hill School and M. Doe at Meadowridge Academy.

At issue are G.L. 1956 §§ 16-64-1.1 and 16-64-1.2; each of these statutes underwent substantial revision in 2001. *See* P.L. 2001, ch. 77, art. 22, § 3. Previously, reimbursements for the cost of educating children placed in residential facilities were divided into two categories: reimbursements for "seriously emotionally disturbed children" and reimbursements for "[a]ll other children placed by DCYF in group homes, child caring facilities, community residences, or other residential facilities * * *." *See* P.L. 1997, ch. 73, § 1; P.L. 1998, ch. 68, § 3.  For the former category, the municipality paid "its share of the cost of educational services to DCYF," which was defined as "at least its average per pupil cost for special education for the year in which placement commences * * *." Public Laws 1997, ch. 73, § 1; P.L. 1998, ch. 68, § 3.  For the latter category, the municipality where the child's parents resided paid a "contribution * * * [that was] at least the amount of the average per pupil cost for general or special education" to DCYF or

---

[1] A. Doe and M. Doe were minors during the Family Court proceedings.  We use pseudonyms to respect their privacy.

to the municipality where the residential facility was located. Public Laws 1998, ch. 68, § 3.

Since the 2001 amendment, however, reimbursements have been divided into two different categories: reimbursements for children placed by DCYF in residential facilities that do not include the delivery of educational services and reimbursements for children placed by DCYF in residential facilities that do include the delivery of educational services.[2] *See* § 16-64-1.1. For the former category, the municipality where the residential facility is located provides the child with education, and the municipality is reimbursed by the state based upon the number of "beds" that the municipality provides in its residential facilities. Section 16-64-1.1(b). For the latter category, the child

> "shall have the cost of their education paid for as provided for in * * * § 16-64-1.2. The city or town determined to be responsible to DCYF for a per-pupil special-education cost pursuant to § 16-64-1.2 shall pay its share of the cost of educational services to DCYF or to the facility providing educational services." Section 16-64-1.1(c).

---

[2] Since the 2001 amendment, G.L. 1956 § 16-64-1.1(b) has been further amended to change the amount of state aid received by each municipality containing a residential facility. *Compare* § 16-64-1.1(b), *with* P.L. 2001, ch. 77, art. 22, § 3. The essence of the subsection, however, has remained the same. *Compare* § 16-64-1.1(b), *with* P.L. 2001, ch. 77, art. 22, § 3. Section 16-64-1.1(c) has also been amended since 2001, but only stylistic, not substantive, changes were made. *See* P.L. 2016, ch. 142, art. 11, § 6 (adding hyphens, deleting a comma, and deleting an extraneous prepositional phrase). Section 16-64-1.2 has not been amended since 2001. *Compare* § 16-64-1.2, *with* P.L. 2001, ch. 77, art. 22, § 3.

Section 16-64-1.2 proceeds to outline the methods of designating the parents' residence for the purpose of determining a municipality's financial responsibility pursuant to § 16-64-1.1. Under § 16-64-1.2(a), an "initial factual determination and designation of the residence of the parent(s) of a child placed in the care and custody of the state shall be made by the [F]amily [C]ourt * * *." Section 16-64-1.2(a). If no such designation is made, the child has been freed or surrendered for adoption, the child's parents do not live in the state, or the parents' residence cannot be determined, then under § 16-64-1.2 (b) and (c), "[t]he department of elementary and secondary education shall designate the city or town to be responsible for the per-pupil special education cost of education to be paid to DCYF * * *." Section 16-64-1.2(b), (c). Under § 16-64-1.2(d), "[t]he designation of a city or town pursuant to subsection (a), (b), or (c) of this section shall constitute prima facie evidence of parents' residence in the city or town and/or the city or town's financial responsibility for the child's education as provided in § 16-64-1.1." Section 16-64-1.2(d).

These consolidated cases began when DCYF filed two "Request[s] for an Order for Residency Determination and Designation of Party Responsible for the Education of a Youth Residing in a Residential Facility" with the Commissioner of Elementary and Secondary Education (the Commissioner), arguing that the municipalities were required to pay the per-pupil special-education rate pursuant to

- 4 -

the unambiguous language of §§ 16-64-1.1 and 16-64-1.2. The Commissioner agreed with DCYF in each case, issuing two decisions that ordered Newport and Cumberland to reimburse DCYF for the cost of educational services provided to the children at the special-education rate. After the Council on Elementary and Secondary Education denied Newport and Cumberland's independent appeals of the Commissioner's decisions, the municipalities appealed to the Superior Court pursuant to the Administrative Procedures Act, G.L. 1956 chapter 35 of title 42. Thereafter, the trial justice consolidated the two cases and issued a written decision.

The trial justice determined that the clear and unambiguous language of § 16-64-1.1(c) required the designated city or town to pay "its share of the cost of educational services to DCYF" rather than the higher, per-pupil special-education rate. (Emphasis omitted) (quoting § 16-64-1.1(c)). She found that § 16-64-1.1(c) was devoid of language that obligated the municipalities to pay more than the actual cost of educational services for the child. She rejected Cumberland's argument that the statute did not require it to pay any of the cost of education, reasoning that "there is no support in either statute for [that] position * * *."

Even if the statute were ambiguous, the trial justice determined that the outcome would not differ because requiring the municipalities to pay almost two and a half times the cost of the children's education would be absurd. As such, she granted the appeals, concluding that Cumberland and Newport were responsible for

- 5 -

the per-pupil *general*-education cost, and ordered each municipality to reimburse DCYF in the amounts due. Thereafter, judgment entered in favor of Cumberland and Newport, and DCYF filed a petition for writ of certiorari in each case.

"When this Court reviews the judgment of the Superior Court in administrative proceedings, our review is limited to questions of law." *Rossi v. Employees' Retirement System*, 895 A.2d 106, 110 (R.I. 2006); *see also* G.L. 1956 § 42-35-16 ("Any party in interest, if aggrieved by a final judgment * * * in proceedings brought under § 42-35-15, may * * * petition the [S]upreme [C]ourt * * * for a writ of certiorari to review any questions of law involved."). "[I]n reviewing the trial justice's legal determinations, this Court has a 'prerogative to affirm a determination of a trial justice on grounds different from those enunciated in his or her decision,' as well as a prerogative to overturn such a determination on different grounds." *Miller v. Metropolitan Property and Casualty Insurance Co.*, 111 A.3d 332, 339 (R.I. 2015) (brackets omitted) (quoting *John Marandola Plumbing & Heating Co. v. Delta Mechanical, Inc.*, 769 A.2d 1272, 1275 (R.I. 2001)).

This Court is the "final arbiter on questions of statutory construction * * *." *Ryan v. City of Providence*, 11 A.3d 68, 70 (R.I. 2011). Therefore, "[a]lthough this Court affords the factual findings of an administrative agency great deference, questions of law—including statutory interpretation—are reviewed *de novo*." *Iselin*

- 6 -

*v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I. 2008). "In so doing, the Court's ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Koback v. Municipal Employees' Retirement System of Rhode Island*, 252 A.3d 1247, 1251 (R.I. 2021) (brackets omitted) (quoting *Lang v. Municipal Employees' Retirement System of Rhode Island*, 222 A.3d 912, 915 (R.I. 2019)). "If a statute is clear and unambiguous, 'we must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *Athena Providence Place v. Pare*, 262 A.3d 679, 681 (R.I. 2021) (quoting *Balmuth v. Dolce for Town of Portsmouth*, 182 A.3d 576, 580 (R.I. 2018)).

Our *de novo* review reveals that there is nothing in § 16-64-1.1 or § 16-64-1.2 that expressly obligates a municipality to pay the per-pupil special-education rate when the child in question is not actually receiving special-education services. *See* §§ 16-64-1.1, -1.2. Section 16-64-1.1(c) provides that the "city or town determined to be responsible to DCYF for a per-pupil special-education *cost* pursuant to § 16-64-1.2 shall pay its share of the cost of educational services to DCYF * * *." Section 16-64-1.1(c) (emphasis added). Section 16-64-1.2 provides that, in circumstances where the parents' residency is not determined by the Family Court, the department of elementary and secondary education "shall designate the city or town to be responsible for the per-pupil special education *cost* of education to be

paid to DCYF * * *." (Emphasis added.) The term "cost" refers to "the amount or equivalent paid or given or charged * * * for anything bought or taken in barter or for service rendered." Webster's Third New International Dictionary 515 (1971). Thus, when the statute authorizes the department of elementary and secondary education to designate a municipality to be responsible for the "per-pupil special education cost," it is not authorizing DCYF to charge the per-pupil special-education *rate* regardless of whether there were special-education costs actually incurred. Pursuant to the clear and unambiguous language of §§ 16-64-1.1 and 16-64-1.2, municipalities are not required to reimburse DCYF at the per-pupil special-education rate when there were no special education services rendered and thus, no special education costs incurred.

There are two issues presented by DCYF's petitions. The first is whether the trial justice erred in finding that the statute did not require the municipalities to pay the per-pupil special-education rate regardless of whether the children received special-education services. The second is whether the trial justice erred in finding that the statute obligated the municipalities to pay the per-pupil *general*-education rate even though the reference to general education was removed from the statute. Having resolved the first issue, the remaining question for us to decide is what reimbursement, if any, DCYF should receive for the educational cost of non-special-education students placed in residential treatment programs that include

- 8 -

the delivery of educational services.  Given that the General Assembly removed the notion of a contribution based upon the average per-pupil cost for general education in 2001, we are inclined to determine that the General Assembly intended to remove the obligation to reimburse DCYF in such circumstances.  However, we deem supplemental briefing necessary to resolve this issue.

Therefore, we direct the parties to file supplemental briefs in accordance with this opinion, and the case may be assigned for further argument thereon.  DCYF is directed to file its supplemental brief within forty days of the date of this opinion.  Thereafter, Cumberland and Newport are directed to file a responsive brief within thirty days of the date of the filing of DCYF's brief.

Justice Long did not participate.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Newport School Committee v. Rhode Island Department of Education et al.<br><br>Cumberland School Committee v. Rhode Island Council on Elementary and Secondary Education et al. |
| **Case Number** | No. 2021-37-M.P. (PC 19-4024)<br>No. 2021-38-M.P. (PC 20-31) |
| **Date Opinion Filed** | June 28, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Per Curiam. |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>William J. Conley, Jr., Esq.<br>Stephen Adams, Esq. |
| | For Defendants:<br><br>Lauren E. Jones, Esq. |