**TOWN OF JOHNSTON, Plaintiff,**

v.

**MERSCORP, INC., et al., Defendant.**

**C.A. No. 12–452–M.**

United States District Court,
D. Rhode Island.

June 21, 2013.

K. Joseph Shekarchi, Warwick, RI, Christian Siebott, Jeffrey D. Lerner, Sara P. Goodman, Stanley D. Bernstein, Bernstein Liebhard LLP, New York, NY, for Plaintiff.

Robert M. Brochin, Todd S. Holbrook, Morgan Lewis & Bockius LLP, Miami, FL, for Defendant.

### *MEMORANDUM AND ORDER*

JOHN J. McCONNELL, JR., District Judge.

The Town of Johnston has brought an action against several banks, mortgage companies, and mortgage servicers[1] for

---

1. MERSCORP, Inc., Mortgage Electronic Registration Systems, Inc. (MERS), Bank of America, N.A., Citibank, N.A., CitiMortgage, Inc., JP Morgan Chase Bank, N.A., Wells Far-go Bank, N.A., Deutsche Bank National Trust Company, Goldman Sachs Mortgage Company, GS Mortgage Securities Corp., and U.S. Bank, N.A.

damages and injunctive relief to redress alleged violations of Rhode Island statutory law. The Town asserts that the system Defendants established for mortgages and mortgage assignments made by their members violates the statutory requirement that all mortgages and mortgage assignments be recorded with the city or town where the land is located. The Town alleges that it was damaged because it was entitled to a recording fee for each mortgage or mortgage assignment that should have been recorded. The Town's claims fail, however, because Rhode Island law does not require that all mortgages and mortgage assignments be recorded. Absent a statutory requirement to record, there are no damages, and, therefore, there is no cause of action.

## I. BACKGROUND AND FACTS

The First Circuit issued an opinion recently about the "mysterious entity" known as MERS—the Mortgage Electronic Registration System—that provides a succinct, but thorough explanation about MERS's origin and purpose. *See Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 287 (1st Cir.2013). In essence,

MERS was formed by a consortium of residential mortgage lenders and investors desiring to streamline the process of transferring ownership of mortgage loans in order to facilitate securitization. *See* Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L.Rev. 1359, 1368–69 (2010). Various entities involved in the residential mortgage lending business can become "members" of MERS. As such, they pay an annual fee and agree to the rules of membership. Lender members may name MERS as mortgagee in mortgages that they originate, service, or own.

MERS's mortgagee status is narrowly circumscribed: it acts solely as "nominee" for the owner or servicer of the mortgage, including the owner's or servicer's successors and assigns. There is one condition: the party for whom MERS serves as nominee must be a member of MERS. The upshot of this arrangement is that MERS holds the legal title to the mortgage as mortgagee of record, but it does not have any beneficial interest in the loan.

MERS maintains an electronic database cataloguing the mortgages that it holds. This database tracks the identities of the noteholders and servicers of the underlying loans. When a note is sold by one MERS member to another, the sale is memorialized in the MERS database, and MERS remains the mortgagee of record.

*Id.*

The MERS system has been further described as follows:

When a home is purchased, the lender obtains from the borrower a promissory note and a mortgage instrument naming MERS as the mortgagee (as nominee for the lender and its successors and assigns). In the mortgage, the borrower assigns his right, title, and interest in the property to MERS, and the mortgage instrument is then recorded in the local land records with MERS as the named mortgagee. When the promissory note is sold (and possibly re-sold) in the secondary mortgage market, the MERS database tracks that transfer. As long as the parties involved in the sale are MERS members [as are most large financial institutions], MERS remains the mortgagee of record (thereby avoiding recording and other transfer fees that are otherwise associated with the sale) and continues to act as an agent for the new owner of the promissory note.

*In re MERS Litig.,* 659 F.Supp.2d 1368, 1370 n. 6 (J.P.M.L.2009). Neither MERS nor MERS members record subsequent assignments in the state or municipal land recording system, nor do they pay statutory recording fees, because the subsequent assignments are not recorded. The Rhode Island Supreme Court stated: "[w]henever a note is sold, assigned, or otherwise transferred to another MERSCORP member, MERS remains as the mortgagee of record. As a result, there is no need to record an assignment of the mortgage in the land evidence records. It is only when a loan is transferred to a nonmember that an assignment of the mortgage must be executed and recorded." *Bucci v. Lehman Bros. Bank, FSB,* 68 A.3d 1069, 1073 (R.I. 2013) (citing *Jackson v. Mortg. Elec. Reg. Sys, Inc.,* 770 N.W.2d 487, 490–91 (Minn. 2009)).

The Town, on its own behalf and on behalf of all other similarly situated Rhode Island cities and towns, brought an Amended Complaint arising "out of Defendants' purposeful, systematic failure to prepare and record all mortgages and mortgage assignments at, and pay attendant recording fees to, municipal recording offices as required by Rhode Island law." (ECF No. 37 at ¶ 1.) The Town alleged that by "creating their own private, electronic recording system" Defendants "maximize[d] profits in the residential and commercial mortgage markets," "sought to avoid the inconvenience and cost of recording" assignments, "effectively privatized land title transactions," "claimed ... priority of their interests," "sought to shield each holder's identity from public disclosure and simultaneously lower securitization costs," and "left [Rhode Island's] public land evidence records littered with broken chains of title." (*Id.* at ¶¶ 3–6.)

It is these facts upon which the Town bases its statutory, unjust enrichment, and public nuisance claims. In short, the Town alleges that Defendants violated Rhode Island's mandatory recording requirements, were unjustly enriched by failing to prepare and record all mortgages and mortgage assignments, and created a public nuisance because their failure to record created gapped and clouded chains of title and other damage to Rhode Island's public recording system. (*Id.* at ¶ 7.)

Defendants have moved jointly to dismiss (ECF No. 44) the Amended Complaint (ECF No. 37), asserting four grounds: 1) the Town has no private right of action to sue for alleged violations relating to assignments, 2) the Town lacks standing to bring this complaint, 3) Defendants have no obligation to record mortgages and mortgage assignments in Rhode Island, and 4) the Amended Complaint fails to state a claim for declaratory and injunctive relief, unjust enrichment, or public nuisance.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *Cook v. Gates,* 528 F.3d 42, 48 (1st Cir.2008); *McCloskey v. Mueller,* 446 F.3d 262, 266 (1st Cir.2006). To withstand "a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *ACA Fin. Guar. Corp. v. Advest, Inc.,* 512 F.3d 46, 58 (1st Cir.2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1967–69, 167 L.Ed.2d 929 (2007)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678–87, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[A] plaintiff ... is ... required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some ac-

tionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

Moreover, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

## III. ANALYSIS

The issue of whether the Rhode Island General Laws required Defendants to record every assignment or sale of the note made among the MERS members is dispositive of all of the Town's claims because if there is no statutory mandate that requires recording, then there is no claim because the Town is not otherwise damaged by the Defendants' failure to record. Therefore, this Court will begin its analysis there.

### A. RECORDING STATUTES

■ The Town asserts that the statutory scheme set forth in Title 34 of the Rhode Island General Laws mandates that all mortgages and mortgage assignments shall be recorded. (ECF No. 37 at ¶ 2.) It points to specific sections and argues, when taken together as whole, the statutory scheme mandates recording. It asserts that recording is mandatory because the public is entitled to complete and accurate land records that reflect the actual property and mortgage owners. In opposition, Defendants argue that the statutes do not state that mortgages and mortgage assignments must be recorded and if the legislature wanted to mandate recordings, they would have so stated. They argue that the recording of mortgages and mortgage assignments is discretionary.

The Town focuses on three statutes to support its argument that recording of mortgages and mortgage assignments is mandatory in Rhode Island—R.I. Gen. Laws §§ 34–11–1, 34–11–4, and 34–13–1(7). (ECF No. 55 at 20–26.) A review of those sections and other relevant statutes in accordance with the rules of statutory construction[2] is necessary to evaluate the validity of the parties' competing interpretations of Rhode Island's mortgage recording statutes.

### Section 34–11–1

The Town begins its argument by asserting that section 34–11–1 (titled "Conveyances required to be in writing and recorded") requires conveyances of land by mortgage to be in writing, signed, delivered, and recorded with the municipal land records office or else it shall be void. It points to the plain language of the statute:

> Every conveyance of lands, tenements or hereditament absolutely, by way of mortgage, or on condition, use or trust,

---

2. When a federal court engages in the interpretation of a state statute, it must follow the state's rules of statutory construction. *See Woods v. Friction Materials, Inc.*, 30 F.3d 255, 263 (1st Cir.1994), *abrogated on other grounds by Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (noting that the federal courts must follow the state courts' construction of state laws). The Rhode Island Supreme Court has ruled that "[i]f the language is clear on its face, then the plain meaning of the statute must be given effect." *Gilbane Co. v. Poulas*, 576 A.2d 1195, 1196 (R.I.1990). And when "the plain language of a statute unambiguously reveals its meaning, and the revealed meaning is not eccentric, courts need not consult other aids to statutory construction." *United States v. Meade*, 175 F.3d 215, 219 (1st Cir.1999).

for any term longer than one year, and all declarations of trusts concerning the conveyance, shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated;

R.I. Gen. Laws § 34–11–1. Defendants point out that this statute, which the General Assembly passed in 1896, has never been interpreted to mandate recording. They state that this statute's effect is to dictate the consequences of not recording, not to mandate recording. This Court finds Defendants' argument persuasive. Section 34–11–1 does not mandate recording, but only addresses the legal effect of recording with respect to third parties if a mortgagee chooses to record a mortgage or assignment. Reading the entire statute as a whole shows that certain unrecorded conveyances are in fact valid, thus acknowledging that all conveyances need not be recorded. The excerpt from section 34–11–1 that the Town relies on is followed, after the semicolon, by an exception noting that "conveyance[s], if delivered, as between the parties and their heirs, and as against those taking by gift or devise, or those having notice thereof, shall be valid and binding though not acknowledged or recorded." This exception undermines the Town's position that all assignments must be recorded, because conveyances to heirs are not void even if not recorded.

Moreover, courts have held that unrecorded mortgages are valid in Rhode Island. For example, a ruling by this federal district court almost 100 years ago supports such an interpretation. The court stated that a "mortgage as between parties, though unrecorded, is valid." *In re Anderson*, 252 F. 272, 273 (D.R.I.1918). *See also R.I. Hosp. Trust Nat'l Bank v. Boiteau*, 119 R.I. 64, 376 A.2d 323, 326 (1977) ("A deed, if delivered, is valid and binding against those who have knowledge

of it even if not acknowledged or recorded."). In fact, the Rhode Island Supreme Court recently stated, albeit *in dicta*, that because of the way the MERS model works, "[w]henever a note is sold, assigned, or otherwise transferred to another MERSCORP member, MERS remains as the mortgagee of record. As a result, *there is no need to record an assignment of the mortgage in the land evidence records.*" *Bucci*, 68 A.3d at 1073 (emphasis added). The validity of unrecorded mortgages as reflected in these decisions demonstrates that the legislature did not intend to mandate that all mortgages be recorded.

### Section 34–11–4

Section 34–11–4 further supports this Court's interpretation that recording is a protective device, not a statutorily mandated requirement. This section (titled "Delivery of conveyance sufficient to pass title") provides in short that "[a]ny form of conveyance in writing, duly signed and delivered by the grantor, ... shall be operative to convey to the grantee all the possession, estate, title and interest, claim, demand or right of entry or action, of the grantor ...; and *if* also duly acknowledged and recorded shall be operative as against third parties." (emphasis added). Thus, this section supports the interpretation that even unrecorded conveyances or assignments are valid as between the parties while offering additional protection as against certain third parties to a grantee that chooses to record an instrument of conveyance.

### Section 34–13–1

The Town next relies on section 34–13–1 (titled "Instruments eligible for recording") arguing that the statement in subsection (7) "all instruments required by statute to be recorded, including deeds, mortgages and transfers and discharges thereof ..." shows that recording is re-

quired for deeds, mortgages, etc. R.I. Gen. Laws § 34-13-1(7).

Defendants argue that this subsection does not require that mortgages be recorded and is not directed to mortgagees at all. Rather, the Defendants point out this subsection, directed to the town clerk who is charged with conducting the ministerial act of recording, merely requires the town clerk to accept any instrument that is required to be recorded.[3] The Court agrees. Section 34-11-4 does not contain language indicating that recording is mandatory. When read with sections 34-11-1 and 34-11-4, which recognize that the grantee or assignee may choose not to record, this Court finds that this section does not support the Town's position.

Mindful of the well-established rules of statutory construction, this Court rules that none of the statutes the Town relies on requires a party assigning a mortgage or receiving an assignment on a mortgage to record that assignment, but rather dictates the consequences of *not* recording. The "town clerk or recorder of deeds" is required to record such instruments "on request of any person and on payment of the lawful fees therefor," but that is not tantamount to a mandate to mortgagees or assignees. R.I. Gen. Laws § 34-13-1.

The General Assembly has made clear the consequences for not recording, and the existence of these consequences highlight that recording is not mandatory.[4] Therefore, because the Town's claims rely on its contention that Rhode Island General Laws require mortgages and mortgage assignments to be recorded, and this Court finds that contention is not supported by the plain language of the statutes, this Court dismisses the Town's claims for statutory violations, declaratory and injunctive relief, and public nuisance for failure to state claims upon which relief can be granted.[5]

The Town argued at the hearing that it does not believe that, if this Court were to decide that recording is not required, its unjust enrichment claim is subject to summary dismissal. As such, this Court turns to the Town's allegations on unjust enrichment and Defendants' motion to dismiss that claim as well.

3. Defendants further point out that there are discrete areas where recording is required and that this subsection could well be applicable to those. *See e.g.* R.I. Gen Laws §§ 34-13-11 (recording required for name change) and 34-18.2-3 (recording required for homeowners' associations). (ECF No. 70 at 59-60.)

4. Moreover, it is the General Assembly's role, not this Court's, to draft, pass, and amend legislation. Currently, there are two identical bills before the General Assembly entitled, "An Act Relating to Property—Forms and Effect of Conveyances," whose language explicitly requires that mortgages be recorded. *See* H.B. 5512 SUB A, 2013 Gen. Assemb., Jan. Sess. (R.I.2013); S.B. 547, 2013 Gen. Assemb., Jan. Sess. (R.I.2013). The "act would provide that all transfers of a mortgage interest on residential property be recorded so as to provide a clean chain of title for consumers to track the owner of their mortgage loans, and will render moot the question of standing of a nominee in foreclosure actions by discontinuing the practice of recording mortgages in the name of a party other than the holder of the note secured by the mortgage. This act would also require assignments be recorded within a certain time or render the mortgage void, but not nullify the underlying indebtedness." *Id.* This proposed legislation is further evidence to this Court that the current statutory language governing mortgages and mortgage assignments does not contemplate mandatory recording.

5. Because this Court does not interpret the statutes as mandating recording of mortgages and mortgage assignments, this Court need not reach Defendants' motion on whether the Town has standing or a private right of action to bring this suit.

## B. UNJUST ENRICHMENT

The Town alleges Defendants were unjustly enriched because they took advantage of the benefit of priority when they recorded the initial mortgage assignment. The Town believes that it conferred a benefit because the statute creates the scheme by which the municipality confers the benefit of priority upon the act of recording. The Defendants took that benefit and then sold the representation of first priority down the line ultimately to investors in the securitization. Because Defendants did not record the interim assignments, they did not maintain the priority that they were selling, and the Town argues that applies whether the recording statute is mandatory or not. Defendants counter by arguing even if this Court were to find that recording was mandatory, the Town did not confer a benefit on them.

In order to state a claim for unjust enrichment, "a plaintiff must prove three elements. First, a benefit must be conferred upon the defendant by the plaintiff. Second, there must be an appreciation by the defendant of such benefit. Finally, there must be an acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without paying the value thereof." *R & B Elec. Co., Inc. v. Amco Const. Co., Inc.*, 471 A.2d 1351, 1355–56 (R.I.1984) (citing *Bailey v. West*, 105 R.I. 61, 249 A.2d 414, 417 (1969)).

The Town alleges that its Amended Complaint states sufficient facts to establish a cause of action for unjust enrichment. Specifically, the Town alleges that it conferred two benefits on Defendants: first "by recording an initial assignment, MERS Members took advantage of the benefit of priority conferred by G.L. § 34–25–2" and "[s]econd, recording allowed Defendants to represent to MBS [Mortgage Backed Securities] investors that the underlying mortgage loans were first lien mortgages, which made the MBS appear safer and more attractive to investors, which was the ultimate end-game for Defendants—to quickly and cheaply securitize mortgage loans and sell the MBS to investors." (ECF No. 37 at ¶ 145.) This improper conduct, the Town alleges, caused Defendants to be "unjustly enriched at the expense of and to the detriment of Plaintiff and the Class." (*Id.* at ¶ 146.)

While these allegations are well pled, the Town's unjust enrichment claim still fails. Its allegations of an unjust benefit continue to presume that the statutory scheme requires mortgages and mortgage assignments to be recorded. However, as this Court discussed *supra*, Rhode Island's statutory scheme does not require these instruments to be recorded. Moreover, the Town's allegation is not that MERS failed to pay a recording fee for any mortgage and mortgage assignment that it actually recorded; it is that MERS should have recorded, but did not. The mere fact that the statutes provide that the town must make itself available to record if parties chose to do so does not confer a benefit to MERS. Therefore, because this Court finds the Town's unjust enrichment claim is based on its erroneous interpretation that the statutes require recording of these instruments, the unjust enrichment claim meets the same fate as the others.

## IV. CONCLUSION

Because this Court finds that there is no mandatory recording requirement in the current iteration of the Rhode Island General Laws, Defendants' Motion to Dismiss (ECF No. 44) is GRANTED.

IT IS SO ORDERED.